GERMAN AMERICAN INSURANCE COMPANY *vs.* PERSON DAVIS
& others.

Suffolk.   March 15. — June 30, 1881.   COLT, LORD & DEVENS, JJ., absent.

A court of chancery will not reform a written contract entered into deliberately,
so as to make it conform to an alleged oral contract differing in terms, unless
the proofs of mutual mistake are full, clear and decisive.

An insurance company issued to A. a policy of insurance against fire upon his
house, payable in case of loss to B., and containing the provision that, if the
property should be sold, the policy should be void. After the policy was issued,
A. sold the house. Afterwards B., who held a mortgage of the house, entered
for the purpose of foreclosure. Being advised that he ought to notify the in-
surance company of this entry, he had an interview with its agent for this pur-
pose, which resulted in putting upon the policy the following indorsement:
"B., the party to whom this policy is payable in case of loss, being mortgagee,
has entered for breach of the conditions of his said mortgage. It is understood
and agreed that this policy shall attach and cover his interest as such." The
agent did not know of the previous conveyance by A. B. knew of it, but did
not then think of it, and there was no fraudulent concealment on his part.
Shortly afterwards the house was destroyed by fire, and B. brought an action
at law to recover the amount insured, contending that the indorsement on the
policy was, in legal effect, a new and independent contract of insurance made
with him. The insurance company then brought a bill in equity against B. to
correct and reform the indorsement, upon the ground that, if this was its con-
struction and legal effect, it was made by a mutual mistake, and did not express
the oral contract previously made between the parties. The evidence tended
to show that the agent understood that the oral contract was that the company
would waive the right to object to the entry to foreclose, and would not insist
upon the policy being defeated thereby. B. testified that he applied to have
a new policy issued to protect his interest; that the form of indorsement upon
the old policy was adopted at the agent's suggestion; and that B. understood
both the oral and the written contract to be a new contract of insurance. *Held,*
that, upon this evidence, the bill could not be maintained.

BILL IN EQUITY, filed October 14, 1879, to reform certain
indorsements made by the plaintiff upon two policies of insur-
ance issued by it to Emma L. Putney. Hearing before *Soule*, J.,
who, at the request of the parties, reserved the case for the con-
sideration of the full court. The facts appear in the opinion.

*J. H. Benton, Jr.*, for the plaintiff.

*C. A. Welch & J. L. Thorndike*, for the defendants.

MORTON, J.  To justify a court of chancery in correcting and
reforming a written contract entered into deliberately, so as to
make it conform to an alleged oral contract differing in terms,
the proofs of mutual mistake must be full, clear and decisive.

It must appear beyond reasonable doubt that the precise terms of a contract had been orally agreed upon between the parties, and that the written instrument afterwards signed fails to be, as it was intended, an execution of the previous agreement, but expresses a different contract; and that this is the result of a mutual mistake. Otherwise, if a contract should be reformed upon proof of the mistake of one of the parties as to its terms or legal effect, the injustice would be done of imposing upon the other party a contract to which he had never assented. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290. *Sawyer* v. *Hovey*, 3 Allen, 331. *Canedy* v. *Marcy*, 13 Gray, 373.

In the case before us, it appears that the plaintiffs issued to one Putney two policies of insurance against fire upon her house in Cambridge, payable in case of loss to Davis, Taylor and Demmon to extent of their interest, each policy containing the provision that, if the property should be sold, or if any change should be made in the title or possession thereof, the policy should be void. After the policies were issued, Putney sold the house, thus avoiding them. Afterwards the defendants, who held a mortgage on the house, entered for the purpose of foreclosure. Being advised by counsel that they ought to notify the insurance company of this entry, Taylor, one of the defendants, called at the office of its agent for that purpose, and the interview then had resulted in putting upon each policy the following indorsement: "Boston, December 21, 1878. Davis, Taylor & Demmon, the parties to whom this policy is payable in case of loss, being mortgagees, have entered for breach of the conditions of their said mortgage. It is understood and agreed that this policy shall attach and cover their interest as such." The plaintiff's agent did not know of the previous conveyance by Putney. Taylor knew of it, but did not then think of it; and there is no evidence of a fraudulent concealment on his part.

Shortly afterwards the house was destroyed by fire, and the defendants brought an action at law to recover the amount insured, contending that the indorsement on each policy was, in legal effect, a new and independent contract of insurance made with them. The plaintiffs thereupon brought this bill to correct and reform the indorsements, upon the ground that, if this is their construction and legal effect, they were made by a

mutual mistake, and did not express the oral contract previously made between the parties. The question whether there was a new contract of insurance is properly to be tried in the suit at law, and we are not called upon to decide it in this case, because, if we assume that the defendants' construction of the indorsements is the correct one, the plaintiff fails to show a mutual mistake so clearly and decisively as to justify us, under the rules of law before stated, in reforming the contract. There was evidence tending to show that the plaintiff's agent understood that the oral contract was that the company should waive the right to object to the entry to foreclose, and should not insist upon the policies being defeated thereby. But, on the other hand, Taylor, who transacted all the business for the defendants, testified that he applied to have new policies issued to protect their interest; that the form of indorsements upon the old policies was adopted at the suggestion of the plaintiff's agent; and that he, Taylor, understood both the oral and the written contract to be in effect a new contract of insurance. His testimony is not impeached, and there is nothing in the surrounding circumstances to lead to a serious doubt that such was his understanding. The fact that Putney had made a previous conveyance of the house, and that this was unknown to the company, does not seem important. Both parties understood that the policies were avoided by the entry to foreclose, and the fact that it was also void for another reason was immaterial to the risk, and could not have any bearing upon the question as to what contract the parties should make for the future.

Upon the whole evidence, we cannot say that it is proved that Taylor understood the oral contract to be as is now claimed by the plaintiff. If, as is not improbable, the parties understood the oral contract differently, after it was reduced to writing and executed, they are both bound in equity and at law by the terms of the written instrument, and it must be construed by the court. We are of opinion that the plaintiff does not show that there was a mutual mistake, which would justify the court in correcting and reforming the written indorsements, as prayed for in this bill.                              *Bill dismissed.*