FIREMAN'S FUND INSURANCE COMPANY *vs.* BESSIE SHAPIRO
& others.

Suffolk.   May 18, 1933. — June 1, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Insurance,* Fire: issuance of policy, reformation of policy. *Equity Juris-diction,* Reformation. *Contract,* What constitutes, Reformation. *Mistake. Agency,* Scope of authority. *Estoppel.*

In a certain locality, there were only two established rates for fire insurance, one of which, lower than the other, was for a policy containing a clause limiting in certain respects the liability of the company issuing it, and the other, the "flat" rate, was for a policy not containing such clause. An owner of property, through an insurance broker, applied to an insurance company for a policy on the property "at the low rate." A policy was issued at a premium computed on the "low" rate, and the owner paid such premium. The policy did not contain the limitation clause. The company did not intend to issue the policy without such clause, the omission being by mistake of the company's policy writer. A few days later the mistake was discovered by the company and such clause was ordered indorsed on the policy by it and a copy of the clause was sent to the broker. The owner had no actual knowledge of the prevailing rates or the rate at which the policy was written, and he never saw the policy, which had been sent to and retained by a mortgagee, or a copy of the limitation clause. A fire occurred thereafter, and the company brought a suit in equity to reform the policy by adding the limitation clause. *Held,* that

(1) The contract between the owner and the company was made by the application of the owner through his broker for insurance and the issuance by the company of a policy purporting to be in accordance with the terms of the application;

(2) The broker was the agent of the owner in making the application for insurance and the owner was bound by the application;

(3) The application must be construed as an application for a policy containing the limitation clause;

(4) The mutual understanding of the owner and the company contemplated the issuance of a policy containing such clause;

(5) The mistake, whereby the policy in fact issued was materially at variance with such understanding, was mutual; it was immaterial that such clause was omitted from the policy by an agent of the company;

(6) No act of the company relied upon by the owner estopped the company to assert that the policy as issued did not conform to the parties' understanding;

(7) The company was entitled to the relief which it sought.

It appearing in the suit in equity above described that the parties agreed that the plaintiff was liable on the policy in some form, the plaintiff was precluded from contending that, because of variance between the application and the policy, no contract of insurance was made when the policy was issued.

BILL IN EQUITY, filed in the Superior Court on October 8, 1931, described in the opinion.

The suit was heard by *Dillon*, J. Material evidence, findings by the judge and a final decree entered by his order are described in the opinion. The plaintiff appealed. The evidence was reported.

The case was argued at the bar in May, 1933, before *Pierce, Wait, Field, & Lummus,* JJ., and afterwards was submitted on briefs to all the Justices except *Wait,* J.

*C. F. Albert,* (*R. J. Walsh* with him,) for the plaintiff.

*J. W. Tushins,* for the defendants.

FIELD, J. This is a suit in equity brought by an insurance company against the owner of a building in Boston and the first and second mortgagees thereof to reform a fire insurance policy on such building by adding thereto a so called "80% Reduced Rate Clause" providing, in substance, that the plaintiff shall be liable for no greater proportion of any loss than the amount of the policy bears to eighty per cent of the actual value of insured property at the time of the loss. The parties agreed that a fire occurred on the premises on July 21, 1931, that under the insurance policy the plaintiff was liable for loss, that if the policy should contain the "80% Reduced Rate Clause" the full amount of the plaintiff's liability is $3,184.96, but if it should not contain that clause its liability is $4,505.63, and that payment by the plaintiff of the sum of $3,184.96 to persons entitled thereto under the policy should be without prejudice to the plaintiff's rights to have the policy reformed by adding thereto the clause in question. The judge who heard the case made findings of fact and ordered entered a decree that there was due to the defendant owner of the premises from the plaintiff the sum of $1,320.67 — the difference between $4,505.63 and $3,184.96 — with interest, and that the bill be dismissed with costs to be paid

by the plaintiff.   The plaintiff appealed.   The evidence is reported.

The judge found properly on the evidence the following facts:  The order for the policy was given in behalf of the owner by an insurance broker.   He requested the agents of the plaintiff to issue a policy covering the property for the term of five years "at the low rate."   The established rates for the risk insured were eighty-four cents per $100 for the term of five years provided the so called "80% Reduced Rate Clause" was made a part of the policy, and $1.20 per $100 insurance, or the "flat rate," if said clause was not made a part thereof.   After the application was received it was turned over to the "policy writer" in the office of the plaintiff's agent.   A policy was issued May 13, 1930.   It was written and sent to the first mortgagee without the so called "80% Reduced Rate Clause," but the premium was computed at the rate of eighty-four cents per $100 insurance and the owner was charged by the plaintiff and paid the premium at that rate.   The owner never saw the policy. After the policy was delivered a report that it had been issued was sent to the Fire Insurance Stamping Office for the Metropolitan District, an organization with certain duties including the duty of discovering errors in rates. The failure to include the "80% Reduced Rate Clause" was discovered May 20, 1930, and the plaintiff's agents notified.   Thereafter, some time before the fire, an indorsement of such a clause on the policy was ordered by the plaintiff's agents and copies of such a clause were mailed — one to the stamping office and one to the insurance broker. No copy was ever received by the defendant owner, or seen by her.   She received no information of the error until after the fire had occurred.   She had no knowledge of the insurance rate or the rate at which the policy had been written, except so far as the knowledge of the broker might be imputed to her as matter of law.   The plaintiff never intended to issue the policy for the amount of the premium paid without the "80% Reduced Rate Clause."   But no act of the defendant owner induced the plaintiff to issue and deliver the policy in the manner described.

The judge further found that there "was no stipulation that the policy should contain a so called '80% Reduced Rate Clause' or that the premium for said policy should be at the rate of eighty-four cents per $100 of insurance or at any other stipulated rate," that there was no agreement that the terms of the policy should include the so called "80% Reduced Rate Clause," and that the "policy was issued without said '80% Reduced Rate Clause' affixed as a result of a mistake made by the agents of the . . . [plaintiff]. The mistake was that of the insurer and not of the insured. The mistake was not mutual." The judge ruled that "the . . . [plaintiff] is not entitled to the relief prayed for, to wit, that said policy be reformed by adding thereto the said '80% Reduced Rate Clause.' "

The findings that there was no "stipulation" or "agreement" that the policy should contain an "80% Reduced Rate Clause" were proper so far as they mean that there was no such "stipulation" or "agreement" in terms. But on the warranted findings, considered in connection with the evidence, the policy contemplated by the parties would have included such a clause, and the policy as issued, therefore, did not express the mutual understanding of the parties as to the terms of the proposed bargain.

The contract between the parties was made by the application of the owner through her broker for insurance and the issuance by the plaintiff of a policy purporting to be in accordance with the terms of the application. *American Mutual Liability Ins. Co.* v. *Condon*, 280 Mass. 517, 524. In view of the agreement of the parties that the plaintiff was liable under the policy the plaintiff is precluded from contending that, because of variance between the application and the policy, no contract of insurance was made when the policy was issued. See *Hayes* v. *Penn Mutual Life Ins. Co.* 222 Mass. 382, 389. There was, however, no act of the owner at or after the time the policy was issued by which she agreed to a substituted contract different in terms from the application. And there was no act on the part of the plaintiff relied on by the owner which estopped the plaintiff from asserting that the policy as issued did

not express the mutual understanding of the parties as to the terms of the proposed bargain.

It must be taken on the warranted findings and the evidence that the parties contemplated the issuance of a policy containing the "80% Reduced Rate Clause." The finding of the judge that the policy was issued without such a clause as a result of a "mistake" made by agents of the plaintiff so implies. The application for the policy by the owner must be construed as an application for a policy containing such a clause. The broker was the agent of the owner to make application for insurance and the owner was bound by the application made by him. See *Ritson* v. *Atlas Assurance Co. Ltd.* 279 Mass. 385, 392. He applied for a policy "at the low rate," though he did not in terms apply for a policy containing the "80% Reduced Rate Clause." "Ordinarily, it is not expected that an application for insurance will contain all of the terms and conditions which are included in the policy when it is issued. Certain particulars are named, others are not. The application is for such insurance on such terms and conditions as, in view of the particulars submitted, the company sells. It is to be presumed that, as in other cases, the purchaser has made himself acquainted with what he is purchasing." *Commonwealth Mutual Fire Ins. Co.* v. *William Knabe & Co. Manuf. Co.* 171 Mass. 265, 270. The established rates in Boston were only two — a "flat rate" and an "80% Reduced Rate." Though it does not appear affirmatively that the owner or her agent knew that this was the fact, and though there was no agreement in terms that the policy should contain the "80% Reduced Rate Clause," it must be presumed, in the absence of evidence to the contrary, that the application for insurance "at the low rate" contemplated that the plaintiff should insure the owner's property at the "80% Reduced Rate," the only "low rate" at which insurance was sold by the plaintiff. Consequently, a policy containing the "80% Reduced Rate Clause" was all the owner applied for, and all that she was entitled to on her application if it was accepted by the plaintiff. Furthermore, it was all that she paid for. And the plaintiff

intended to issue a policy containing the "80% Reduced Rate Clause." This was the mutual understanding of the parties as to the proposed contract of insurance. See Williston on Contracts, § 1548.

The policy by reason of the omission of the "80% Reduced Rate Clause" was materially at variance with the mutual understanding of the parties thereto. The mistake was mutual in that the intention common to both parties was not expressed in the policy. See *Canedy* v. *Marcy*, 13 Gray, 373, 376. A mistake was "made out according to the understanding of both parties." See *Martin* v. *Jablonski*, 253 Mass. 451, 453. The case in this respect is unlike *German American Ins. Co.* v. *Davis*, 131 Mass. 316, where the evidence failed to show, as to one of the parties to a written instrument, that it did not express his intention. See also *Barrell* v. *Britton*, 252 Mass. 504, 508. Clearly it was the intention of the plaintiff that the "80% Reduced Rate Clause" should be included in the policy. The only evidence bearing on the owner's intention is the evidence of the application made in her behalf by the broker, which must be interpreted as an application for a policy containing this clause. This is not a case where the instrument sought to be reformed is strong evidence of the intention of a party executing it, for the owner did not sign or even see the policy. See *Kidder* v. *Greenman*, 283 Mass. 601, 614. It is immaterial that the error of omitting the "80% Reduced Rate Clause" from the policy was made by the plaintiff's agent. The essential element of mutuality in the mistake was not in the clerical act of the agent, but in the common intention of the parties which failed of expression. See *Canedy* v. *Marcy*, 13 Gray, 373, 377; Williston on Contracts, § 1535. In the circumstances shown the plaintiff is entitled to have the policy reformed to conform to the mutual understanding of the parties. *Canedy* v. *Marcy*, 13 Gray, 373. *Crowley* v. *Holdsworth*, 264 Mass. 303, 308. *Keith* v. *Thomas*, 266 Mass. 566. *Bourbeau* v. *Whittaker*, 277 Mass. 28. Am. Law Inst. Restatement: Contracts, § 504. Williston on Contracts, § 1547.

The decree must be reversed and a decree, with costs.

entered ordering reformation of the policy by adding thereto a so called "80% Reduced Rate Clause" and fixing the liability of the plaintiff in accordance with the policy so reformed.

*Ordered accordingly.*