350                    57 Mass. App. Ct. 350 (2003)

Simon *v*. National Union Fire Insurance Company of Pittsburgh, PA.

FRANKLIN SIMON, trustee,[1] *vs.* NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA.

No. 00-P-1804.

Norfolk. November 6, 2002. - February 10, 2003.

Present: BROWN, BERRY, & MILLS, JJ.

*Insurance,* Fire, Coverage.

In a civil action brought by an insured seeking coverage under its insurance
policy for damage to a vacant property that was destroyed by fire, the
judge properly granted summary judgment in favor of the insurer, where
the listing of the property with no stated dollar value in a schedule that
was part of the policy and the testimony of both the broker who negotiated
the policy on behalf of the insured and the insurer's underwriter confirmed
the intent of the parties that the property was not to be covered under the
policy. [352-355]

CIVIL ACTIONS commenced in the Superior Court Department
on April 12, 1996, and August 14, 1997, respectively.

Following consolidation, the case was heard by *Ralph D.
Gants,* J., on a motion for summary judgment.

*Richard F. Wholley* for the plaintiff.

*Christian W. Habersaat* for the defendant.

BROWN, J. The plaintiff, Franklin Simon (Simon), trustee of
the 125 Sea Street Nominee Trust (Trust), appeals from a sum-
mary judgment entered in favor of the defendant, National
Union Fire Insurance Company of Pittsburgh, PA (National). All
the relevant materials that were before the motion judges are
also before us on appeal. "In this posture, for purposes of our
review, we look at a trial judge's decision to allow a motion
for summary judgment, albeit useful, as a 'nondispositive
prelude.' " *Harrison* v. *Boston Financial Data Servs., Inc.,* 37
Mass. App. Ct. 133, 133 n.1 (1994).

[1] Of the 125 Sea Street Nominee Trust.

On April 28, 1995, a fire destroyed the property located at 125 Sea Street, Quincy. For some time before the fire, the subject property had been vacant. Less than a month before the fire, the Trust leased the property (in its vacant condition) to Custom House Associates Limited Partnership (Custom House). At the time of the fire Custom House was in the process of renovating the premises for use as a restaurant. Prior to the fire, Simon had not informed National of the leasehold arrangement or of the renovation work to the 125 Sea Street property.

Simon, on behalf of the Trust, notified National, its insurer, of the loss and submitted claims for property damage and lost rental value. On March 28, 1996, National denied coverage under the policy. The policy in question was procured for the Trust through its insurance broker, Sheppard, Riley, Coughlin Insurance Agency, Inc. (SRC). Simon, on behalf of the Trust, then commenced this action against National, SRC, and SRC's employee, John Swanson. Simon claimed that the policy covered the 125 Sea Street property at the time of the fire; alternatively, Simon alleged that if the property was not insured, SRC was negligent in failing to see to it that there was insurance for the premises.[2]

On October 31, 1997, a Superior Court judge denied a summary judgment motion filed by National.[3] Nearly two years later, on August 9, 1999, after the close of discovery, National filed a second motion for summary judgment, with additional supporting materials. Simon opposed, and also filed a motion to strike. A different Superior Court judge denied Simon's motion to strike and allowed National's motion for summary judgment.[4] Summary judgment for National was correctly entered.[5]

---

[2]Simon later commenced a separate action against his insurance advisor, J.H. Albert International Insurance Advisors, Inc.; this action was subsequently consolidated with the action against National, SRC, and Swanson.

[3]The judge reasoned that the policy (specifically an attached so-called statement of values) was ambiguous as to whether the 125 Sea Street property was covered.

[4]It is settled law that a Superior Court judge may act as the second judge did here. See *Riley* v. *Presnell*, 409 Mass. 239, 240, 242 (1991); *Cataldo Ambulance Serv., Inc.* v. *Chelsea*, 426 Mass. 383, 389 (1998). See also Lummus, The "Law of the Case" in Massachusetts, 9 B.U. L. Rev. 225, 234 (1929).

[5]We are not unmindful "that in cases involving a state of mind, where credibility of witnesses may be important, summary judgment may be inappropriate." *Welford* v. *Nobrega*, 30 Mass. App. Ct. 92, 99 (1991), *S.C.*, 411 Mass. 798 (1992).

The insurance contract by and between Simon and National covered certain real and personal property owned by a group of companies, collectively the "Simon Companies"; Simon is general partner (or trustee) of each entity within this group. On Simon's behalf, SRC negotiated and obtained from National an inland marine basic insurance policy. That policy had effective dates of October 1, 1994, to October 1, 1995.

Prior to the policy's issuance, Simon (or SRC) had supplied National with a schedule listing certain real estate within the portfolio of the Simon Companies. Comprised of both residential and commercial space, twenty-six properties (situated in Massachusetts, New Hampshire, and Rhode Island) were identified by Simon on this schedule, which was formally made an attachment to the policy, as issued.[6] Some information was provided as to the individual properties: area square footage, occupancy, and "protection" (the latter reference being to existing fire alarms, hydrants, heat detectors, or other like equipment at a given site). National played no role whatsoever in the preparation of the schedule, but did rely on the information contained therein and based its premium, and coverage, on the stated values for the particular properties.

Of special significance to this case, some, but not all, of the properties had an identified dollar value (under heading "real property") and rent collectible. For the 125 Sea Street property, however, no dollar value or rent was shown; instead, where these values would have been placed on the schedule, there were simply three dash marks ("- - -").[7] See note 3, supra. And, other than its square footage, the 125 Sea Street property was described by these telling remarks: "Vacant restaurant to be demolished it is anticipated [that] land . . . will be developed into condominiums or apts[.]"

---

[6]It is not contested that the above-described schedule was an integral part of the National policy, as issued.

[7]It is noteworthy that on this same schedule, there were five other properties that had no assigned dollar value or rent shown, but instead had the same three dash marks in the place where such values would have been noted. Of this subset, four were described as being "vacant land," and the fifth a "vacant service station," which, like the 125 Sea Street property, was said "to be demolished" in anticipation of being developed into condominiums or apartments.

At the end of the schedule, there is a total of all stated dollar values for real property, personal property, and rents that the parties agree amounted to $68,883,551. Not surprisingly, this same sum ($68,883,551) is the same amount that is referenced in the policy as being the limit of liability from the combined coverages. Simon's premium was based on this $68,883,551 figure. National's underwriter (Bernard Mone), who was responsible for issuing the policy, averred that only those properties that had stated values, which were twenty in all on the schedule, were intended to be covered by National. Reinsurance obtained by National was limited to the twenty properties with stated values.

By an endorsement to the policy, the insured and insurer "agreed" that "special terms and conditions" governed the maximum limit of National's liability, which, in pertinent part, are:

> "2. The premium for this policy is based upon the Statement of Values on file with [National], or attached to this policy. In the event of loss hereunder, liability of [National] shall be limited to the *least* of the following:

> ". . .

> "(b) the total stated value for the property involved, as shown on the latest Statement of Values on file with [National] or attached to this policy, less applicable deductible(s); . . . ."

The meaning of this endorsement is not reasonably disputed. If Simon were to establish an insurable loss for 125 Sea Street, National's liability limit would be governed by paragraph 2(b). Since 125 Sea Street has no stated value, Simon argues more generally that the insurance policy was described as a "blanket" policy, and, as such, ought to cover 125 Sea Street, which was listed on the policy (along with the nominee trust of like name); Simon does not point to any other representation or statement by National, within the text of the insurance policy, to establish that 125 Sea Street was insured under the policy. It follows from his argument that insurance coverage could be afforded him up to the $68,883,551 limit. Thus, Simon's reading of the policy would lead to the result that the six vacant properties

354                 57 Mass. App. Ct. 350 (2003)

Simon *v.* National Union Fire Insurance Company of Pittsburgh, PA.

listed on the schedule (as submitted by him) would be afforded substantially greater coverage than those properties that had specific values assigned to them. His interpretation of the policy is overdrawn.

Furthermore, it cannot fairly be maintained that if 125 Sea Street was not covered, the "errors and omissions" clause in Simon's policy serves a saving function, allowing the insured simply to report the error to National as soon as possible after the loss (which Simon did), and, upon payment of an appropriate premium, obtain the desired coverage.[8] We conclude, as did the second motion judge, that such a standard clause does not permit an insured to obtain insurance coverage for an uncovered loss that has already occurred.

On the critical issue of the parties' intent, we, like the motion judge, can properly consider all the submissions respecting the negotiation of the policy and other circumstances attending its issuance.[9] The judge rightly concluded, in interpreting this negotiated contract, that "the pertinent intent . . . must be the intent of the agent [SRC] who participated in negotiating the contract, not the intent of the principal [Simon] who did not." Here, SRC confirmed, in no uncertain terms, that 125 Sea Street was not intended to be covered by the policy. National's underwriter testified in like fashion. No other credible evidence was offered to controvert or otherwise rebut the inescapable conclusion here that the policy was not intended to cover the 125 Sea Street property. As against National, Simon "is charged with his agent's knowledge of the terms and conditions of an insurance policy." *Aguiar* v. *Generali Assicurazioni Ins. Co.*, 47 Mass. App. Ct. 687, 690 (1999). Relatedly, "an insured cannot

---

[8]That clause provides: "Any unintentional error or omission made by the Insured shall not be void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery and pays appropriate premium thereon. In the event that the Insured commits an unintentional error the Company's liability shall be limited to the occurrence limit of liability or the amount indicated on the separate errors and omissions limitation . . . whichever is less."

[9]The parties' disagreement as to the proper interpretation does not, in and of itself, create such an ambiguity. *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987). Further, since the policy here was a negotiated contract, by and between SRC and National, there is no occasion to invoke the concept that ambiguities are to be resolved against the insurer.

abandon all responsibility for ascertaining the terms of the coverage his broker obtained." *Campione* v. *Wilson*, 422 Mass. 185, 196 (1996). Accord *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. Ct. 29, 32 (1997).

The judge's granting summary judgment in favor of National was eminently sensible.[10] By all accounts, 125 Sea Street was, during the policy period, a vacant structure; it was not until shortly before the fire broke out in April, 1995, that some renovation work was undertaken to the property. Simon did not alert National to the same, or pay a premium for the property. It would be expected that an insurer, like National, would demand a premium to be paid if obligated to insure a vacant building from damage caused by fire. The court's comments in *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 382 (1998), are instructive: "As the incident underlying this case shows, an abandoned structure may present serious risks that unimproved land does not. A rational insurer could therefore decide to exclude abandoned structures from a . . . policy or to insure such structures by charging an additional premium."

In short, the plaintiff did not meet, by "countervailing materials," the moving party's demonstration, "by reference to material described in Mass.R.Civ.P. 56(c)," 365 Mass. 824 (1974), of its entitlement to summary judgment. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Accordingly, we conclude, as matter of law, that the 125 Sea Street property was not covered by the policy.

*Judgment affirmed.*

---

[10]Simon had "the initial burden of proving coverage within the policy description of covered risks." *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 321 (1991). There being no dispute as to the underlying facts, it is the " 'meaning and effect of the various documents' . . . that are at issue." *Rotundi* v. *Arbella Mut. Ins. Co.*, 54 Mass. App. Ct. 906, 907 (2002), quoting from *Samagaio* v. *Davidson*, 6 Mass. App. Ct. 773, 776 (1979).