Scott Caron & another[1] vs. Horace Mann Insurance
Company.

Essex. April 4, 2013. - August 9, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Insurance,* Amount of recovery for loss, Construction of policy, Coverage,
Homeowner's insurance, Liability insurance. *Contract,* Construction of
contract, Insurance, Mistake, Reformation. *Mistake. Practice, Civil,* Sum-
mary judgment. *Dog.*

A Superior Court judge erred in concluding that a homeowner's insurance
policy should be reformed, on the ground of mutual mistake, by striking an
"animal liability endorsement" that limited coverage of claims arising
from animal bites, where there was an absence of full, clear, and decisive
proof of some prior expressed agreement between the homeowner and the
insurer's agent concerning coverage for animal bites different from that
contained in the policy. [222-225]

Civil action commenced in the Superior Court Department on
March 25, 2009.

The case was heard by *Robert A. Cornetta,* J., on motions for
summary judgment, and entry of separate and final judgment
was ordered by him.

The Supreme Judicial Court granted an application for direct
appellate review.

*Owen Gallagher (Kara Larzelere* with him) for the defendant.

*Eric J. Parker (Susan M. Bourque & Lisa M. Scalisi* with
him) for the plaintiffs.

*Paul M. Moretti,* for Property Casualty Insurers Association
of America, amicus curiae, submitted a brief.

Lenk, J. The written homeowner's insurance policy at issue
here had an over-all coverage limit of $500,000, but also
contained an "animal liability" indorsement that limited cover-
age to $25,000 per occurrence for claims arising from animal

[1]Caryn Caron.

bites. The question before us is whether, on the ground of mutual mistake, the policy should be reformed by striking that indorsement. It is undisputed that both the insurance company's agent and the homeowner mistakenly believed that the policy did not contain such a limitation of liability, but that neither conveyed her mistaken belief to the other. We conclude that, absent full, clear, and decisive proof of some prior agreement between the parties as to coverage for animal bites different from that contained in the policy, there was no mutual mistake warranting reformation of the policy. We accordingly reverse the entry of partial summary judgment in the insured's favor ordering such reformation, and order the entry of separate and final judgment for the insurer on the reformation claim.

1. *Background.*[2] In March, 2006, Alan and Katherine Fowler purchased a homeowner's insurance policy from the Horace Mann Insurance Company (Horace Mann). The policy was to replace a previous policy the Fowlers had purchased through the Massachusetts Property Insurance Underwriting Association's assigned risk pool ("FAIR plan").[3] The FAIR plan was considerably more expensive than commercial homeowner's insurance policies, and the Fowlers sought a more affordable option.

On March 10, 2006, Katherine[4] met with Barbara Bode,[5] Horace Mann's agent, at Bode's office to prepare an application for homeowner's insurance through Horace Mann. Bode requested a copy of the declarations page for the Fowlers' FAIR plan policy; the declarations page indicated that the personal liability limit was $500,000. Bode asked Katherine if she owned

---

[2]The undisputed facts are taken from the summary judgment record.

[3]The Fowlers had been unable to obtain commercial homeowner's insurance until that point due to a 2002 house fire.

[4]Because she shares a last name with her husband Alan, we refer to Katherine Fowler by her first name.

[5]Katherine had first met Barbara Bode at the middle school where Katherine was employed while Bode was distributing fliers that advertised her services as an insurance agent. At that time, Bode informed Katherine that the Fowlers were not eligible to obtain insurance outside the Massachusetts Property Insurance Underwriting Association's assigned risk pool ("FAIR plan"), because that required two years of claim-free experience. Bode told Katherine to contact her when the Fowlers were eligible. In March, 2006, Katherine contacted Bode to discuss replacing the Fowlers' FAIR plan policy with a policy from the Horace Mann Insurance Company (Horace Mann).

certain specific breeds of dog, and Katherine answered, "[N]o." Katherine added that she owned an American Bull Dog (which was not among the breeds Bode had named). Katherine did not express any concern as to the potential risk for the American Bull Dog breed, nor did she ask any questions about coverage for dog-related claims.

Bode printed Katherine's completed application form, and they both signed the form. Katherine gave Bode a check for $310, representing forty per cent of the total premium cost. The policy was substantially less expensive than Katherine's then-existing FAIR plan policy. Bode provided Katherine a "Verification of Coverage" sheet, showing personal liability limits of $500,000, and informed Katherine that a full policy would be mailed to her.

When Katherine received the full policy, she "skimmed" through it. The policy contained an "Animal Liability Endorsement" (indorsement)[6] which limited coverage to $25,000 for claims arising from animal bites, and precluded any coverage for bites by certain listed breeds of dog; the Fowlers' American Bull Dog was not among the excluded breeds. According to Katherine's affidavit, when she purchased the policy after meeting with Bode, she mistakenly assumed that the policy provided the full $500,000 in liability coverage for claims involving animal bites. Bode states in her affidavit that she, too, mistakenly believed that the policy would provide full liability coverage for dog bite claims if the dog was not one of the listed excluded breeds, although she never conveyed this belief to Katherine. Indeed, during their meeting, Bode and Katherine did not discuss coverage for animal bite claims.

On June 17, 2006, plaintiff Scott Caron was bitten in the face and severely injured by the Fowlers' dog. He and his wife Caryn brought an action against the Fowlers in the Superior Court. A

---

[6]The "Animal Liability Endorsement" (indorsement) provided:

"For loss or claim arising from an animal bite by an animal not listed under exclusion 14 above, or described in exclusion 15 above, the most we will pay is $25,000 per occurrence."

Beginning in February, 2000, all Horace Mann homeowner's insurance policies had been required to include this indorsement.

jury found for the Carons and awarded them $250,559.96, including prejudgment interest. Horace Mann paid $25,000 of this judgment, maintaining that, due to the indorsement, such was the extent of its liability. The Carons reached a settlement with the Fowlers regarding the balance of the judgment, and became assignees of the Fowlers' claims against Horace Mann.

The Carons then commenced an action in the Superior Court against Horace Mann alleging, among other claims,[7] that the Fowlers and Horace Mann were mutually mistaken as to the application of the indorsement, and thus that the policy should be reformed by striking the indorsement. A Superior Court judge granted partial summary judgment in favor of the Carons on this claim, and denied Horace Mann's cross motion for summary judgment on all counts. The judge allowed the Carons' motion for entry of separate and final judgment on the reformation claim, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).

Horace Mann moved to correct the judgment, Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974), and the judge issued an amended final judgment against Horace Mann, totaling $225,559.96, with interest in the amount of $77,197.80. Horace Mann appealed, and we granted its application for direct appellate review.

2. *Discussion.* a. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). "Because our review is de novo, we accord no deference to the decision of the motion judge." *DeWolfe* v. *Hingham Ctr., Ltd.*, 464 Mass. 795, 799 (2013). In order to prevail on a motion for summary judgment on a claim for reformation due to mutual mistake, the moving party must establish "that the undisputed material facts fully, clearly, and decisively show[] a mutual mistake." *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 756 (1993) (*Polaroid*).

---

[7]The plaintiffs also alleged negligence predicated upon errors and omissions on the part of the defendant for failing to advise the Fowlers of the indorsement, as well as negligent misrepresentation.

b. *Mutual mistake.* i. *Plaintiffs' motion for summary judgment.* Insurance policies may be reformed under the same principles as any other contract. See *Polaroid, supra* at 756. The "doctrine of reformation is driven by respect for the parties' intent and 'gives effect to the terms mutually agreed upon by the parties.' " *Berezin* v. *Regency Sav. Bank,* 234 F.3d 68, 72 (1st Cir. 2000), quoting *Southeastern Ins. Agency, Inc.* v. *Lumbermens Mut. Ins. Co.,* 38 Mass. App. Ct. 642, 646 (1995), *S.C.,* 423 Mass. 1008 (1996) (*Southeastern Ins. Agency*). "If the language of a written instrument does not reflect the true intent of both parties, the mutual mistake is reformable." *Polaroid, supra.* See 2 G. Couch, Insurance § 27:1 (3d. rev. ed. 2010) ("Equity will reform a contract which, by reason of mutual mistake, does not express the real agreement between the parties"). "The mistake must either be mutual . . . or be made by one party and known to the other party" (citations omitted), *Polaroid, supra,* and "must relate to an essential element of the agreement." *LaFleur* v. *C.C. Pierce Co.,* 398 Mass. 254, 257-258 (1986).

Here, there is no dispute that, under the policy as written, coverage for claims arising from a bite by the Fowlers' dog was limited to $25,000. It is also undisputed that Horace Mann fully intended the indorsement to be included in the policy and to limit the Fowlers' coverage for animal bite claims. Indeed, the indorsement was mandatory in all Horace Mann policies.

The summary judgment record indicates, however, that Katherine mistakenly believed that the policy provided up to $500,000 in personal liability coverage for "any incident at all," including claims resulting from a dog bite. Nonetheless, nothing in the record suggests that Katherine expressed this understanding to Bode, Horace Mann's agent, and Katherine undisputedly did not ask Bode any questions regarding the extent of coverage for animal bite claims. Bode, in turn, testified at her deposition that she also mistakenly believed that the policy would provide coverage up to the $500,000 personal liability limit for a dog bite claim, but that she neither conveyed this understanding to Katherine nor even discussed coverage for dog bite liability with her.

The question before us, then, is whether Bode's misunderstand-

ing of the indorsement, which was never expressed to Katherine, but which tracks Katherine's own misunderstanding, provides a basis by which the Carons may claim mutual mistake. See *Simon* v. *National Union Fire Ins. Co. of Pittsburgh*, 57 Mass. App. Ct. 350, 354 (2003) ("the pertinent intent [for analyzing mutual mistake] . . . must be the intent of the agent . . . who participated in negotiating the contract, not the intent of the principal . . . who did not"). The rationale underlying the mutual mistake doctrine compels us to answer in the negative.

The mutual mistake doctrine exists to effectuate the agreement intended by the parties to a contract where the contract language fails to capture that agreement. Central to this doctrine is the fundamental underpinning that the parties had reached an agreement on a point which they intended to enshrine in the written contract but which, for some reason, was mistakenly omitted from that written contract. See *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 595-596 (1976) ("this court will not decree a reformation unless we are convinced that the parties *expressed agreement* and an *intention to be bound* in accordance with the terms that we are asked to establish and enforce" [emphasis supplied]); *German Am. Ins. Co.* v. *Davis*, 131 Mass. 316, 317 (1881) ("It must appear beyond reasonable doubt that the precise terms of a contract had been orally agreed upon between the parties, and that the written instrument afterwards signed fails to be, as it was intended, an execution of the previous agreement"). See also 2 G. Couch, Insurance, *supra* at § 27:3 ("A mistake is mutual where the parties have agreed to accomplish a particular object by the policy, and the policy as executed was insufficient to effectuate the intention"); 66 Am. Jur. 2d Reformation of Instruments § 21 (2011) ("A party may be entitled to reform a contract on a theory of mutual mistake if, at the time of contracting, both parties were laboring under the same misapprehension as to a particular, essential fact; the minds of the parties must have met and reached a prior existing agreement that the written document fails to express").

Here, Bode's misunderstanding as to the application of the indorsement cannot serve as the necessary prerequisite to a claim of mutual mistake. Although her misunderstanding is consistent with Katherine's misunderstanding, it is not a prior

"expressed agreement" because Bode never communicated this misunderstanding to Katherine.[8] See *Sancta Maria Hosp.* v. *Cambridge, supra.* Where Bode never discussed the extent of coverage for animal bite claims with Katherine, Katherine's mistaken assumption that her policy included the full $500,000 in personal liability coverage for animal bites lacks "[t]he essential element of mutuality in the mistake," *Fireman's Fund Ins. Co.* v. *Shapiro,* 286 Mass. 577, 582 (1934), to warrant reformation. This is particularly so given that Katherine never expressed her misunderstanding to Bode or to Horace Mann. See *Tupper* v. *Hancock,* 319 Mass. 105, 108 (1946) ("unexpressed intent of one of the parties cannot control the legal effect of what was done"). But see *Fireman's Fund Ins. Co.* v. *Shapiro, supra* at 581-582.[9]

---

[8]Katherine testified at her deposition:

> *Q.*: "Did she [Bode] discuss anything specific relative to the coverage you would have for animal bites?"
>
> *A.*: "No, she did not."
>
> . . .
>
> *Q.*: "Did [Bode] discuss with you coverage that you would be receiving under the Horace Man policy for your dog?"
>
> *A.*: "No, she did not."
>
> *Q.*: "Did you ask her any questions concerning insurance coverage for your dog under the Horace Mann policy?"
>
> *A.* "I did not."

Bode testified at her deposition:

> "There was never any discussion with the Fowlers about coverage as it might pertain to a claim for their dog . . . . Dog liability was never discussed [with Katherine] . . . . When I met with the Fowlers, we did not discuss dog liability . . . . I never had any concerns from the Fowlers about liability coverage of any type, be it dog or otherwise."

[9]The Carons rely chiefly on *Fireman's Fund Ins. Co.* v. *Shapiro,* 286 Mass. 577 (1934), for the proposition that a finding of mutual mistake does not require an explicit agreement between the parties to the contract. In that case, an insured was offered two rates for a policy and directed an insurance broker to issue her a policy "at the low rate." *Id.* at 579. The insurer issued the policy but failed to include the reduced rate clause in the policy despite charging the insured according to the lower rate. *Id.* The court permitted reformation of the contract to reflect the lower rate, notwithstanding a finding by the

That Katherine silently harbored an assumption[10] that the policy would provide the full $500,000 in liability coverage for "any incident at all" is not a basis for reformation of a policy whose written "animal liability endorsement" plainly contradicts such an assumption, a policy which Katherine only "skim[med] through." See *LaFleur* v. *C.C. Pierce Co.*, 398 Mass. 254, 257-258 (1986) ("A contract will not be rescinded for mutual mistake where one party was aware at the time the contract was signed that he had limited knowledge as to essential facts, but nonetheless assumed the risk that circumstances would prove to be other than as expected"); *Epstein* v. *Northwestern Nat. Ins. Co.*, 267 Mass. 571, 574-575 (1929) ("insured is presumed to have assented to the terms of [a] new policy if it is retained without reading or read without complaint and rejection").

Simply put, the written policy indisputably limited liability coverage for claims stemming from a bite by the Fowlers' dog to $25,000, and nothing in the record "fully, clearly, and decisively" demonstrates that this amount of coverage fails to reflect a previous agreement between the parties to the policy. See *Polaroid, supra* at 756. Thus, there is no basis upon which to reform the contract.[11] See *Sancta Maria Hosp.* v. *Cambridge, supra.*

motion judge that "there was no 'stipulation' or 'agreement' [between the parties] that the policy should contain [the reduced rate clause]." *Id.* at 580.

The court determined, however, that the parties had implicitly reached an agreement that the policy would contain the lower rate by virtue of the insured's application explicitly requesting the reduced rate and the insurer's issuance of a policy pursuant to that application. *Id.* at 581-582. Here, by contrast, Katherine did not apply for or express any desire for a specific level of coverage for dog bite liability.

[10]The following exchange took place at Katherine's deposition:

Q.: "At the time you received [the policy], were you aware that there was a limitation for animal liability attached to the policy?"

A.: "In looking at this document, I assumed the personal liability which is listed on the front was an overall liability."

Q.: "Okay, but so you assume that that $500,000 liability would cover any incidents at all?"

A.: "Right. The same way I assumed on my Massachusetts Fair Plan that their $500,000 liability would cover any incident at all."

[11]The motion judge determined that there was a mutual mistake as to the

ii. *Defendant's cross motion for summary judgment.* Having concluded that the Carons are not entitled to summary judgment on the reformation claim, we consider whether such judgment may properly enter in favor of Horace Mann. "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or she] demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

As stated, the undisputed material facts demonstrate that Bode and Katherine never discussed animal liability coverage, and thus their independent mistakes as to such coverage were in no way mutual. The Carons, as the party seeking reformation, would have the burden at trial of establishing "fully, clearly, and decisively" that the parties were mutually mistaken as to the coverage for animal bites. See *Polaroid, supra.* Even viewing this undisputed factual record in the light most favorable to the Carons, it is clear that they have "no reasonable expectation of proving" that a mutual mistake existed between Horace Mann and the Fowlers. See *Kourouvacilis* v. *General Motors Corp.*, *supra.* Accordingly, Horace Mann is entitled to judgment as a matter of law on the reformation claim.

3. *Conclusion.* The judgment granting separate and final judg-

policy's coverage for animal bites based on Bode's statement that she intended to provide coverage "of like kind and extent" to that which the Fowlers had under their previous policy. Bode also testified, however, that she saw only the general liability limits set forth on the declarations page of the prior policy, and never saw or had knowledge of any applicable exclusions and indorsements, including any possible animal bite indorsement. Katherine testified that she simply "assumed" the prior policy did not limit her coverage for animal bites, as she incorrectly assumed for the policy at issue here. Moreover, nothing in the record indicates that Katherine communicated this assumption to Bode. The FAIR plan policy is not in the record, and thus the level of coverage it provided for animal bite claims is unclear.

In any event, in addition to the reasons cited in the text, Bode's single, imprecise statement does not "fully, clearly, and decisively" demonstrate that Bode reached an agreement with Katherine that the Horace Mann policy would provide full personal liability coverage for animal bite claims, given that Bode had no knowledge of the type of coverage the FAIR plan policy provided for such claims. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 756 (1993).

ment in favor of the Carons on count three of the complaint is vacated and set aside. Separate and final judgment shall enter in favor of Horace Mann on count three of the complaint. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*