NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1357

ESSEX SPORTS CENTER, LLC

vs.

NEUROSPORT CPT, INC., & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial in the Superior Court, the trial judge found that the defendant, Daniel Kantor, had personally guaranteed a lease between the plaintiff, Essex Sports Center, LLC, and defendant NeuroSport CPT, Inc. (NeuroSport), and found the defendant liable to the plaintiff for damages.  The defendant appeals, arguing that the judge erroneously reformed the terms of the guaranty and that he is not liable for NeuroSport's debts under the lease.  We affirm.

---

[1] HPN Concussion Management, Inc.; Frederick Willis; and Daniel Kantor.

Background.  We summarize the facts as set forth in the judge's findings, supplemented by evidence introduced at the trial.

In 2019, the plaintiff entered negotiations to lease space in its Middleton youth sports facility to HPN Concussion Management, Inc. (HPN), a Massachusetts corporation.  The defendant shared ownership of HPN with his business partner and coinvestor, defendant Frederick Willis.[2]  As a precondition to the lease, the plaintiff required that the defendant and Willis each personally guarantee it.  As originally drafted, the lease and guaranties named HPN as the tenant.

In June 2019, the Secretary of the Commonwealth dissolved HPN.  The defendant and Willis then formed NeuroSport, a Florida corporation.  The defendant served as the incorporator and was listed in the articles of incorporation as treasurer, a director, and resident agent.  The defendant and Willis informed the plaintiff that NeuroSport was their new corporate entity and would be the named tenant in the lease.  Accordingly, the lease was edited to substitute NeuroSport for HPN as the tenant.  The defendant signed the lease as treasurer of NeuroSport and the

_____

[2] Willis, who is now deceased, is not a party to this appeal.

2

guaranty in his individual capacity.[3]  However, the guaranty

pages were not edited and still named HPN as the tenant.

NeuroSport moved into the leased space in August 2019.

Soon thereafter Willis terminated the defendant from all

involvement with NeuroSport.  The defendant notified the

plaintiff of his termination and requested that he be removed

from the lease; the plaintiff declined.

Just over a year after NeuroSport took possession of the

premises, the plaintiff terminated its tenancy for nonpayment of

rent;[4] the plaintiff then filed this suit in the Superior Court

to collect money still owed under the lease.  Following a jury-

waived trial on the issue of the defendant's liability, the

judge found that the defendant had personally guaranteed the

lease between the plaintiff and NeuroSport.  The judge stated

expressly that she did not credit the defendant's testimony that

he was unaware he was signing a personal guaranty for

---

[3] Under the terms of the guaranty, "for premises located at
the Essex Sports Center, 15 Manning Avenue, Middleton,
Massachusetts," the defendant "absolutely and unconditionally
guarantees to Landlord the full and prompt payment of all rents
and other amounts provided for in the Lease to be paid by Tenant
thereunder."

[4] In the interim, the plaintiff filed a summary process
action in the District Court and was granted possession and some
damages.

3

NeuroSport.  The judge entered judgment against the defendant in the amount of $97,944.84.[5]

Discussion.  1.  Reformation due to mutual mistake.  The defendant argues the judge erred in reforming the guaranty and holding him liable for NeuroSport's debts.  If a judge determines that an instrument contains a mutual mistake of law or fact -- meaning "the language adopted by the parties did not reflect their true intent" -- the judge may reform the instrument to effectuate that intent.  Mickelson v. Barnet, 390 Mass. 786, 791 (1984).  An instrument may be reformed "once the existence of a mistake is established by 'full, clear, and decisive proof.'"  Bellemare v. Clermont, 69 Mass. App. Ct. 566, 572 (2007), quoting Barker v. Barker, 447 Mass. 1012, 1012-1013 (2006).

The defendant asserts the doctrine of mutual mistake does not apply in this case because the mistake -- the failure to substitute NeuroSport for HPN on the guaranty -- was the plaintiff's alone.  "In contract law, reformation will not be granted unless the parties' mistake is mutual."  Berman v.

---

[5] This amount represented NeuroSport's unpaid rent, less the rent the plaintiff received from a subsequent tenant.  With prejudgment interest and costs, the judgment totaled $135,335.90.

4

Sandler, 379 Mass. 506, 509-510 (1980).[6] Essential to the doctrine of mutual mistake is the existence of an agreement between the parties "on a point which they intended to enshrine in the written contract but which, for some reason, was mistakenly omitted from that written contract." Caron v. Horace Mann Ins. Co., 466 Mass. 218, 223 (2013).

The propriety of reformation in this case thus turns on whether the judge correctly found that both parties intended for the guaranty to refer to NeuroSport, despite its naming HPN. "[C]ontracting parties' intent is an issue of fact." Balles v. Babcock Power Inc., 476 Mass. 565, 572 n.14 (2017). "[W]e review the judge's factual findings for clear error, giving deference to her assessment of witness credibility." Ciampa v. Bank of Am., 88 Mass. App. Ct. 28, 30 (2015).

The plaintiff presented considerable evidence suggesting the defendant intended to sign the whole lease -- including the guaranty -- on behalf of NeuroSport. The guaranty was not contained in a stand-alone document; it was on page ten of NeuroSport's seventeen-page lease. When the defendant separated

---

[6] An agreement may also be reformable under the doctrine of unilateral mistake. See Nissan Autos. of Marlborough, Inc. v. Glick, 62 Mass. App. Ct. 302, 307 (2004). Because we, like the trial judge, decide this case on the ground of mutual mistake, we need not address whether the doctrine of unilateral mistake applies.

from NeuroSport, he requested that the plaintiff revise the lease, demonstrating that he was aware of his liability. When the plaintiff responded in the negative, and noted that the defendant was a guarantor, he did not object.

Nonetheless, the defendant contends that he believed the guaranty accurately referred to HPN and that he did not know or have reason to know he was guaranteeing NeuroSport's performance. See Barrell v. Britton, 252 Mass. 504, 508 (1925) ("If one of the parties understood the agreement to be substantially as written, the other party will not be entitled to relief on the ground of mistake"). The judge, however, expressly discredited the defendant's testimony that he was unaware he was signing a personal guaranty for NeuroSport. The judge had good reason to doubt the defendant's credibility. At trial the defendant equivocated regarding his status at NeuroSport and admitted that he had signed an affidavit in support of a motion to dismiss, which included false statements about his status, without carefully reading it. At the time the defendant signed the guaranty, HPN was defunct and was not the subject of any lease agreement. The leased premises was illustrated on page eleven of the lease -- the page immediately following the defendant's guaranty -- casting doubt on the truth

6

of his claim that he believed he was guaranteeing a lease for HPN in a different space in the same building.

The judge's factual finding that the plaintiff and the defendant both intended for the defendant to guarantee NeuroSport's lease was supported by the evidence and is not clearly erroneous. Accordingly, her conclusion that the failure to substitute NeuroSport for HPN on the guaranty constituted mutual mistake, and her decision to reform the contract to reflect the parties' agreement, was sound as a matter of law.

2. <u>Statute of Frauds</u>. In the alternative, the defendant contends the Statute of Frauds bars the enforcement of the guaranty. Under the Statute of Frauds,

> "No action shall be brought . . . [t]o charge a person upon a special promise to answer for the debt, default or misdoings of another . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized."

G. L. c. 259, § 1. The defendant argues that because he did not agree in writing to guarantee NeuroSport's debts -- only HPN's debts -- the Statute of Frauds bars the plaintiff's claim against him.

The Statute of Frauds does not prohibit the reformation of a lease to correct a mutual mistake. See <u>American Oil Co</u>. v. <u>Cherubini</u>, 351 Mass. 581, 587 (1967). See also Restatement

7

(Second) of Contracts § 156 (1981) ("If reformation of a writing is otherwise appropriate, it is not precluded by the fact that the contract is within the Statute of Frauds").  Therefore, the Statute of Frauds did not prevent the judge from reforming the guaranty to reflect the parties' intent by substituting NeuroSport for HPN and enforcing the guaranty as reformed.

<u>Judgment affirmed</u>.

By the Court (Massing, Sacks & Allen, JJ.[7]),

Clerk

Entered:  November 21, 2025.

---

[7] The panelists are listed in order of seniority.

8