PENNSYLVANIA MILLERS MUTUAL INS. CO. *v.* WALTON.

5-2925                                      365 S. W. 2d 859

Opinion delivered March 25, 1963.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*Wooton, Land & Matthews,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from an order dismissing a cross-complaint against an insurance agent by the insurer seeking indemnity from the agent for a loss.

For some years Mrs. H. A. Ross had purchased residence insurance from appellee W. I. Walton, an agent for

appellant, Pennsylvania Millers Mutual Insurance Company. In 1958, appellee wrote Mrs. Ross about a new policy on residence and contents known as the home-owner's policy. Pursuant to the letter Mrs. Ross went to appellee's office and discussed the new policy with appellee Mrs. Mildred Cagle, an employee of appellee Walton. On one side of a printed brochure which was enclosed in the letter to Mrs. Ross were two columns, one for listing present coverages and the other for coverages available under the homeowner's policy. On the other side of the brochure were pictures of common hazards, including water escape damage. Mrs. Cagle filled in the two columns, showing all coverages listed as being included in the new policy recommended to Mrs. Ross, and Mrs. Ross then purchased the policy. Mrs. Ross kept the brochure and apparently did not read the policy when she received it.

When Mrs. Cagle issued the policy, the testimony indicates, she knew there were three different types of homeowner's policies, but did not know that water escape damage was not covered by the Type A policy issued to Mrs. Ross (but was covered under Types B and C, more extensive policies), nor did appellee Walton, who checked the form of the policy before signing it, appear to know of the lack of coverage.

On March 2, 1961, Mrs. Ross' home suffered water escape damage. In reply to a call, appellee Walton advised that the loss was covered. It is undisputed that the Type A policy does not cover water escape damage.

When appellant denied liability under the Type A policy, Mrs. Ross brought suit against the company seeking reformation of the policy on the ground of mutual mistake on her part and that of the company's agent. Appellant answered, denying coverage, and cross-complained against appellees alleging that if appellee's agency had been guilty of a mistake, error or omission permitting reformation, then appellant, as principal, was entitled to indemnity from the agent guilty of the error or omission. Mrs. Ross then amended her complaint to seek relief jointly and alternatively from appellant and appellees.

Following a trial on the merits, the Chancellor held that the policy should be reformed because of the mutual mistake and the omission, through error, to issue a policy covering water escape damage; that Mrs. Ross was entitled to judgment against appellant less the difference in the premium paid on policy A and that due under policy B, and that appellees were not liable to appellant for the error or mistake of appellee Cagle.

For reversal, appellant contends that since the liability to the policy holder of appellant was, under the undisputed evidence, caused by a mistake, error or omission of appellees, appellant's agents, and moreover, since the trial court expressly so held, the trial court erred in denying to appellant its prayer for indemnity from its agents.

Following the reformation of the insurance contract, which decree is not appealed from, the only issue which faces us now is the liability, if any, of appellees, as agents, to appellant, as principal. This resolves the question to one of agency law generally. Appellant argues forcefully that the Chancellor found as a fact that appellees made a mistake, which appellant urges resulted in the loss sued upon here. This is a *non sequitur*. It does not follow, in the absence of a showing of collusion or bad faith, that appellees are liable to appellant for a loss occasioned on an insurance contract which appellees had full power and express authority to make on behalf of appellant.

Assuming, without deciding, that appellant's conclusion is correct that the mistake by appellees was negligence *per se,* the relationship of that mistake to the pertinent facts must be kept in mind. What did the mistake relate to? It relates to the mistaken belief of appellees that Policy A contained the coverage of Policy B. Appellees had full power to bind appellant to Policy A, to Policy B, and Policy C, the latter having no bearing on the case at bar. Had there been no mistake and had appellees issued Policy B in the beginning, no liability could be laid at appellees' feet. Appellee issued Policy A and that policy, coupled with other writing, induced the

Chancellor to reform Policy A into Policy B. Under this set of facts the only claim appellant could have on appellees would be for the difference in the cost of Policy A and the cost of Policy B. Had the Chancellor not correctly assessed that difference in cost to the insured, appellees would have been liable to appellant for that amount (and the insured in turn would have been liable to appellees for the difference).

In its brief, appellant states that there is an abundance of well-established precedent to support its contention and complains that it has been "whipsawed" by the trial court. Appellant fails to point to any of these precedents and we have diligently searched the case law of this state and find no case directly in point. However, the case most nearly in point appears to be *Phoenix Ins. Co.* v. *Banks & Co.,* 114 Ark. 18, 169 S. W. 233, which is against appellant's contention. Cases from other jurisdictions relating to insurance generally are of little help. While not directly in point with reference to the facts here, we think *State Insurance Co.* v. *Richmond,* 71 Iowa 519, 32 N. W. 496, presents an apt simile on the agency matter here involved.

"It is a very important consideration that the company was not drawn into a contract of insurance against a risk which it does not insure against . . .

"If a merchant's clerk should sell goods on credit, which he is employed to sell in that way, and to a person to whom he might properly sell, but for a price less than he was expressly required to obtain, the measure of the merchant's recovery against the clerk in an action for damages would unquestionably not be greater than the difference between the two prices, and that, too, even if the buyer should become insolvent, and not pay anything. If, on the other hand, the clerk should sell property of his employer of a kind which he was not employed to sell at all, he probably would be held responsible for the whole value . . .

"Having, then, reached the conclusion that the risk assumed was within the appellant's business, and that it was only a question of rates, the appellant should have

shown, before it could recover more than nominal damages, that it was damaged in the matter of rates. With this view, the judgment must be affirmed.''

Affirmed.