## FIDELITY AND CASUALTY COMPANY, OF NEW YORK, a Corporation, Plaintiff-Respondent,

v.

## ARCADIA VALLEY REALTY AND INSURANCE AGENCY, INC., a Corporation, Defendant-Appellant.

### No. 43943.

Missouri Court of Appeals, Eastern District, Division Four.

June 22, 1982.

Colson, Wagner & Freer, David L. Colson, Farmington, for defendant-appellant.

V. Kenneth Rohrer, Roberts, Roberts & Rohrer, Farmington, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from a judgment against it for $16,705 in a court tried case arising from its failure to issue a renewal policy for property on which a loss was sustained. Defendant was a general agent for plaintiff insurance company with authority "to receive and accept proposals for insurance . . . ." It was also a general agent for other insurance companies. We reverse.

Defendant presented no evidence. The facts are therefore those developed by the plaintiff. Acting through an employee, and in accordance with its agency contract, defendant issued a homeowners policy, with plaintiff as insurer, to Bill and Joann Morris for a one year term commencing in March 1973. Coverage included $10,000 for the dwelling, $5000 for unscheduled personalty and $2000 for living expenses. The premium was $63.00. At the time of the issuance of that policy, defendant failed to prepare and file "renewal cards."[1] As a result neither defendant nor plaintiff was alerted to the need to renew the policy after its one year term. In May 1974, the insured contacted defendant and inquired about renewal.[2] At that time defendant and the insured agreed to renewal as of May for one year with the same coverage. Renewal cards were prepared reflecting this coverage but no new policy was actually written by defendant. Neither the Morrises nor plaintiff received copies of a new policy and no premium billing was made. In August 1974, the Morris home was destroyed by fire and at that time defendant

---

1. The record does not make clear exactly what the renewal cards were and whether they would be utilized by defendant, plaintiff or both.

2. The insured testified the contact was made prior to expiration of the original insurance by defendant's employee. The employee testified the contact was in May by the insured. This conflict is irrelevant to our decision.

discovered that the new policy had not been written. Defendant promptly contacted plaintiff, informing it fully of all the circumstances, and requested that plaintiff adjust the Morris claim. Plaintiff paid the Morrises $16,705.00 in December 1974 and then brought this action against defendant for its negligence in failing to renew the policy.

There is no question that a principal may recover from his agent for loss which occurs to the principal as a result of the agent's failure to follow specific instructions or as a result of the agent's negligence. *Oppenheimer Bros. v. J. L. Price Brokerage Co.*, 248 S.W. 310 (Mo.App.1923) [1, 2, 3]; *McKeehan v. Wittels*, 508 S.W.2d 277 (Mo.App.1974) [5]. It may be conceded here that defendant was negligent in failing to issue a renewal policy on the Morris risk, in failing to bill therefor and in failing to notify plaintiff of the renewed risk. It may also be conceded that defendant, under its general agency contract, had the authority to bind plaintiff through its admitted oral contract of insurance. *Chailland v. M.F.A. Mutual Insurance Co.*, 375 S.W.2d 78 (Mo. banc 1964) [7, 8]; *Voss v. American Mutual Liability Insurance Co.*, 341 S.W.2d 270 (Mo.App.1960) [3]. Here four of the necessary five elements of an oral contract of insurance (subject matter, risk, amount and duration) were specifically agreed to, and the fifth (premium) was implicitly agreed to. *See Morris v. Reed*, 510 S.W.2d 234 (Mo.App.1974) [6].

This having been said, we find no evidence of record that plaintiff sustained its loss because of the negligence of the agent. It is stated in 35 A.L.R.3d 821 § 5:

> "Where it can be shown that the knowledge of a particular risk or hazard concealed from an insurer due to an agent's failure to disclose the risk or to report the policy issuance would have materially affected a decision to accept insurance coverage, or would have prompted the cancellation of a policy already issued, the test of proximate causation is met . . . ."

We have not been cited to, nor have we found, any Missouri cases dealing directly with this issue. *See, however, Oppenheimer v. J. L. Price Brokerage Co., supra.* [3]. Other jurisdictions have applied the rule set forth above by requiring some evidence of proximate causation. *Virginia Surety Co. v. Lee*, 55 Tenn.App. 501, 402 S.W.2d 714 (1964) [5]; *Hays v. Farm Bureau Mutual Ins. Co.*, 225 Kan. 205, 589 P.2d 579 (1979) [4]; *Lumbermens Mutual Insurance Company v. Bowman*, 313 F.2d 381 (C.A.10 1963) [11]. As with any other negligence case, plaintiff had the burden to prove that defendant's negligence was the proximate cause of loss to it. Defendant had full authority under its agency contract to issue a policy, binding upon plaintiff, covering the Morris risk. Issuance of the policy therefore was not dependent on any acceptance by plaintiff of the risk. There was also no evidence adduced by plaintiff that notification of the issuance of the policy would have prompted a cancellation of the policy. The same risk for the same coverage had been previously insured by plaintiff through defendant. No cancellation of that policy had been attempted or effectuated by plaintiff. There was no evidence that any change had occurred in that risk after expiration of the term of the first policy. In short, there is no evidence that plaintiff would have refused to accept the risk or cancelled the policy had it been informed by defendant of the issuance.

Plaintiff further contends that defendant's representation of several companies as general agent requires defendant to bear the loss for its failure to issue the renewal policy. The thrust of this argument is that defendant should not be permitted to select the company upon which the loss should be saddled after the loss has occurred. We find this argument unpersuasive. In a suit by the insured against the insurance company, it may well be that the five element test of an oral contract of insurance set forth in *Morris v. Reed, supra,* should be expanded to include the sixth element of a designated carrier where the agent represents more than one carrier. *Julien v. Spring Lake Park Agency*, 283 Minn. 101, 166 N.W.2d 355 (1969) [1, 2]. Here, if that element is necessary, we find

that designation to have been made, at least implicitly, if not explicitly. The plaintiff had been the prior carrier of the risk. Plaintiff alleged and proved that the defendant and the insured agreed to *renewal* of the policy, a term which would indicate placement with the same carrier. In May, the defendant's employee wrote on the original policy "renewed, 5–16–74, 5–16–74" and gave it to the secretary to prepare a new policy. The secretary filled out renewal cards but did not write the new policy. This evidence establishes that plaintiff was not selected after the loss but was the intended carrier throughout. Further, the plaintiff did not defend against the Morris claim on the basis that the oral contract of insurance failed to designate it as the carrier. Its payment to Morris was an admission that it was the designated carrier under the oral contract of insurance and it is not in a position now to assert that some other company was contemplated. *Chailland v. M.F.A. Mutual Ins. Co., supra,* [5].

Under the scope of our review set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo banc 1976) [1], we find there is no evidence to sustain the trial court's judgment and that it erroneously applied the law.

Judgment reversed.

SATZ and PUDLOWSKI, JJ., concur.