SOUTHEASTERN INSURANCE AGENCY, INC. *vs.* LUMBERMENS
MUTUAL INSURANCE COMPANY.

No. 94-P-402.

Bristol. April 12, 1995. - June 21, 1995.

PRESENT: WARNER, C.J., SMITH, & JACOBS, JJ.

Further appellate review granted, 421 Mass. 1102 (1995).

*Insurance*, Property damage. *Indemnity. Proximate Cause. Contract*, In-
surance, Reformation, Mistake. *Agency*, Scope of authority or
employment.

An insurance agent's knowledge of an insured's requirements for primary
and "umbrella" insurance coverage was imputed to the insurance com-
pany and the insurer was bound by the agreement between the agent
and the insured. [645-646]
Where a written policy of insurance was at variance with the mutual
agreement between the insurer's agent and the insured, there was a mu-
tual mistake and the contract was subject to reformation to reflect the
contracting parties' intentions. [646-647]
Where an insurance agent's negligence, in failing to request in a timely
manner that an insurer provide additional coverage under a liability
policy, was not the proximate cause of the insurer's loss when it was
required to make payments in excess of the limits of the existing policy,
the insurer was not entitled to indemnification from the agent for either
the payments or for legal expenses the insurer had a duty to provide.
[647-649]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 23, 1989.

The case was heard by *John A. Tierney*, J., on a statement
of agreed facts.

*Stephen M.A. Woodworth* (*Carroll D. Coletti* with him)
for the defendant.

*Mary Alice McLaughlin* for the plaintiff.

WARNER, C.J. This case presents the questions whether
(1) an insured party, Don Adams Oil Company (Adams), is
entitled to reformation of an insurance contract on the basis
of mutual mistake between it and an insurance agent, South-

eastern Insurance Agency (Southeastern); and (2) an insurer, Lumbermens Mutual Insurance Company (Lumbermens), is entitled to indemnification from the agent for amounts paid in excess of the stated coverage limits. A judge of the Superior Court granted reformation of the insurance contract and denied Lumbermens' request for indemnification. Lumbermens appeals from that decision. We affirm.

We recite the facts from a statement of agreed facts. Southeastern was responsible for purchasing and maintaining two insurance policies for Adams, a primary policy and an umbrella policy. Southeastern and Adams agreed that Southeastern would obtain any increase in primary coverage as requested by the umbrella insurer so that there would be no gap in coverage between the primary policy and the umbrella policy. In 1984, Southeastern purchased a $1,000,000 commercial umbrella insurance policy from Crum & Forster Insurance Company (Crum & Forster) which required Adams to maintain $300,000 of underlying property damage coverage. In 1985, Southeastern purchased a primary commercial automobile liability policy from Lumbermens providing $300,000 of property damage coverage. At all times relevant to this matter, Southeastern was under an agency agreement with Lumbermens which represented that Lumbermens was a servicing carrier for Commonwealth Automobile Reinsurers (CAR). See *Reliance Ins. Co.* v. *Commissioner of Ins.*, 31 Mass. App. Ct. 581, 582 n.2 (1991). Lumbermens ceded Adams' automobile liability policy to CAR for 100% reinsurance, thereby obligating CAR to reimburse Lumbermens for any payments made under the policy.

In June, 1986, Southeastern received a renewal request from Crum & Forster for the umbrella policy which indicated Adams would be required to maintain $500,000 of primary coverage for property damage or $1,000,000 combined single limits coverage, as opposed to $300,000. Crum & Forster did not notify Adams of the change in terms. Southeastern renewed the Crum & Forster umbrella policy for coverage effective as of September 1, 1986.

Southeastern did not contact Lumbermens until October, 1986, to request increased primary coverage as required by the renewed umbrella policy. At that time, Southeastern requested the increase in primary coverage to be effective on January 1, 1987. Lumbermens increased the limits of bodily injury and property damage coverages on all Adams' vehicles to $1,000,000 combined single limits and ceded the policy to CAR to be reinsured. Lumbermens would have increased Adams' coverage as of September 1, 1986, if Southeastern had requested such an increase. Lumbermens did in fact increase coverage on four Adams' vehicles to $1,000,000 combined single limits for bodily injury and property damage as of November 10, 1986, in response to a request from Southeastern.

From September 1, 1986, through December 31, 1986, Adams did not have the requisite $500,000 primary insurance coverage as mandated by the terms of the umbrella policy (with the exception of the four vehicles subject to the November increase). Thus, there was a $200,000 gap between the primary policy's coverage and the umbrella policy's coverage.

On December 1, 1986, an Adams employee pumped fuel oil from an Adams truck into a water well on the property of Robert and Jane Sylvia, rather than into an in-ground oil tank. The truck involved was not one of the four subject to the November increase.

Adams reported the incident to Southeastern. Lumbermens paid $300,000 toward the cost of cleaning up the oil spill. Southeastern sought coverage under the umbrella policy, but Crum & Forster refused to pay until $500,000 was expended for cleanup of the oil spill.

The Sylvias brought an action against Adams for property damage in excess of $500,000, and Adams impleaded Lumbermens as a third-party defendant. Adams commenced a separate action against Southeastern, alleging negligence in failing to provide sufficient primary coverage, and Southeastern impleaded Lumbermens as a third-party defendant seeking reformation of the insurance contract to provide the full

amount of intended coverage. The two actions were consolidated, and issues involving insurance coverage were determined in a separate judgment which is the subject of this appeal.

A Superior Court judge held that Southeastern is an agent of Lumbermens, and under the general laws of agency, Southeastern's knowledge of Adams' insurance coverage requirements is imputed to Lumbermens; Adams is entitled to reformation of the insurance contract with Lumbermens to provide $500,000 of coverage; Southeastern's negligence in failing to notify Lumbermens to increase the underlying insurance coverage was not the proximate cause of Lumbermens' loss; Lumbermens is not entitled to indemnification; and Lumbermens' reinsurance coverage is not relevant.

1. *Reformation.* Lumbermens argues that although reformation is appropriate in the case of a mutual mistake, Southeastern's negligence constituted a unilateral mistake and reformation is therefore inappropriate. *Barrell* v. *Britton*, 252 Mass. 504, 508 (1925). 17 Couch, Insurance §§ 66.30-66.37 (Rhodes rev. 2d ed. 1987). Under the law of agency, however, an insurance agent's knowledge acquired while acting within the scope of the agent's actual or apparent authority is imputed to the insurer even though such knowledge is not actually communicated to the insurer.[1] Southeastern was acting as a Lumbermens agent within the scope of its authority when negotiating the terms of the primary insurance policy with Adams. Adams and Southeastern had agreed that Southeastern would purchase and maintain sufficient primary insurance coverage for Adams so that no gap would exist be-

---

[1] See Restatement (Second) of Agency § 272 (1958); 16C Appleman, Insurance Law and Practice § 9145 (1981). See also *Fireman's Fund Ins. Co.* v. *Shapiro*, 286 Mass. 577, 581-582 (1934); *Jeske* v. *General Acc. Fire & Life Assur. Corp.*, 1 Wis. 2d 70, 89 (1957); *Lumbermens Mut. Ins. Co.* v. *Bowman*, 313 F.2d 381, 388 (10th Cir. 1963); *McGehee* v. *Farmers Ins. Co.*, 734 F.2d 1422, 1424 (10th Cir. 1984); *Aetna Life & Cas. Co.* v. *Little*, 384 So. 2d 213, 215 (Fla. App. 1980); *Fidelity and Cas. Co.* v. *Arcadia Valley Realty and Ins. Agency*, 636 S.W.2d 388, 390 (Mo. App. 1982) (authorizing agent to negotiate binding contract on insurer's behalf under general agency agreement). Compare *Ritson* v. *Atlas Assur. Co.*, 279 Mass. 385, 391 (1932).

tween the primary policy's coverage and the umbrella policy's coverage. Southeastern's knowledge of Adams' insurance coverage requirements is imputed to Lumbermens, and Lumbermens is bound by the agreement between Southeastern and Adams. *Lumbermens Mut. Ins. Co. v. Bowman*, 313 F.2d 381, 388 (10th Cir. 1963). *Pennsylvania Millers Mut. Ins. Co. v. Walton*, 236 Ark. 336, 338 (1963) (insurer liable on contract between insured and agent despite insurer's lack of actual knowledge of contract's terms).

The written policy issued by Lumbermens is at variance with the mutual agreement between Southeastern and Adams in that the policy provides insufficient coverage. Where contracting parties have "an identical intention as to the terms to be embodied" in the contract and the contract fails to reflect that intention, this is mutual mistake, and the contract is subject to reformation. *Franz v. Franz*, 308 Mass. 262, 266 (1941). See *Barrell v. Britton, supra*; *Fireman's Fund Ins. Co. v. Shapiro*, 286 Mass. 577, 582 (1934); *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 756 (1993); Restatement (Second) of Agency § 8D (1958).[2] Reformation of the written contract gives effect to the terms mutually agreed upon by the parties. 17 Couch, Insurance §§ 66.24 (Rhodes rev. 2d ed. 1987). 4A Appleman, Insurance Law and Practice § 2913 (1981). *Jeske v. General Acc. Fire & Life Assur. Corp.*, 1 Wis. 70, 89 (1957).[3] The trial

---

[2] See also *United States v. Lumbermens Mut. Cas. Co. Inc.*, 917 F.2d 654, 658 (1st Cir. 1990) (contract will be reformed if party establishes clear and convincing evidence of contract's failure to reflect parties' true intent due to mutual mistake); *Johnston Equip. v. Industrial Indem.*, 489 N.W.2d 13, 17-18 (Iowa 1992); *Kopff v. Economy Radiator Serv.*, 838 S.W.2d 449, 452 (Mo. App. 1992).

[3] Where both parties to a contract are mistaken but as to different matters, reformation is inappropriate as there is no mutual agreement to enforce. *Harwood v. Security Mut. Life Ins. Co.*, 263 Mass. 341, 347 (1928) (denying reformation where insured believed policy was level premium policy and agent believed it to be annually renewable policy). *Ritson v. Atlas Assur. Co.*, 279 Mass. 385, 391 (1932) (no mutual mistake where both parties mistaken as to different matters). *United States v. Lumbermens Mut. Cas. Co. Inc.*, 917 F.2d 654, 660 (1st Cir. 1990) (refusing reformation where agent fails to agree to make change requested by insured and fails to take any action in response to such request).

judge appropriately reformed the Lumbermens insurance policy to reflect the true intent of Adams and Lumbermens' agent, Southeastern. *Polaroid Corp.* v. *Travelers Indem. Co., supra* at 755-759. *Pennsylvania Millers Mut. Ins. Co.* v. *Walton*, 236 Ark. at 338. Under the terms of the reformed policy, Lumbermens is liable to Adams for $500,000 of coverage for property damage.

2. *Indemnification.* Lumbermens seeks indemnification from Southeastern of the $200,000 it paid in excess of the stated policy limit. Lumbermens argues that an agent is liable to an insurer for damages caused by the agent's failure to disclose material facts which "the insurer should know in order to properly safeguard its rights." 4 Couch, Insurance § 26A:178 (Rhodes rev. 2d ed. 1987). Lumbermens claims that Southeastern's failure to inform it of Adams' insurance requirements prevented Lumbermens from ceding the additional coverage to CAR. As a result, Lumbermens was forced to pay $200,000 from its corporate assets.

Lumbermens may receive indemnification from Southeastern for amounts paid in excess of the stated policy limits if Lumbermens can show bad faith or collusion by Southeastern, *Granite State Ins. Co.* v. *Bacon*, 266 Ark. 842, 845 (1979), or Lumbermens proves Southeastern's negligence was the proximate cause of its actual loss. *Home Ins. Co.* v. *Columbia Ins. Agency, Inc.*, 5 Mass. App. Ct. 621, 622 (1977). 16 Appleman, Insurance Law and Practice § 8781, at 479-84 & n.60 (1981). To show proximate cause, Lumbermens must prove that it would have refused to accept the risk or canceled the policy had it been fully informed by Southeastern.[4]

---

[4]See *Lumberman's Fund Ins. Co.* v. *Jamieson*, 531 F. Supp. 423, 425 (W.D. Tenn. 1982); *Reserve Ins. Co.* v. *Netzer*, 621 F.2d 314, 316 (8th Cir. 1980); *Fireman's Fund Ins. Co.* v. *Jamieson*, 531 F. Supp. 423, 425 (W.D. Tenn. 1982); *Pennsylvania Millers Mut. Ins. Co.* v. *Walton*, 236 Ark. at 338 (no indemnification where contract as reformed covers risks which insurer would insure against); *Fidelity and Cas. Co.* v. *Arcadia Valley Realty and Ins. Agency*, 636 S.W.2d 388, 390 (Mo. App. 1982); *Regino* v. *Aetna Cas. & Sur. Co.*, 200 N.J. Super. 94, 99 (1985) (refusing indemnification where insurer fails to demonstrate it would not have insured loss had agent acted properly).

Lumbermens does not allege that Southeastern acted in bad faith by failing to request the additional coverage in a timely manner. *Granite State Ins. Co.* v. *Bacon, supra.* Lumbermens acknowledges that it would have increased Adams' property damage coverage to $500,000 as of September 1, 1986, had Southeastern so requested. *Pennsylvania Millers Mut. Ins. Co.* v. *Walton, supra.* Therefore, Southeastern's negligence is not the proximate cause of Lumbermens' loss. *Fidelity and Cas. Co.* v. *Arcadia Valley Realty*, 636 S.W.2d 388, 390 (Mo. App. 1982). Lumbermens is not entitled to indemnification of the $200,000 paid in excess of the $300,000 policy limit.[5,6]

3. *Attorney's fees.* Lumbermens seeks indemnification for $25,000 which it reimbursed Adams for defense costs. Where

---

[5]We agree with the trial judge's determination that Lumbermens' inability to cede the insurance to CAR as a result of Southeastern's negligence is irrelevant. The fact that Lumbermens was forced to pay $200,000 in excess of the limit stated in the insurance contract from its corporate assets has no bearing on this result. The logical assumption where any court orders reformation of an insurance contract requiring the insurer to pay an amount greater than the express policy limit is that the insurer will be forced to make a payment which the insurer neither anticipated nor reserved funds to cover.

[6]Lumbermens sought indemnification for $200,000 of coverage in excess of the stated policy limit and $25,000 in attorney's fees, but did not seek to recover the additional premiums it would have received from Adams had Southeastern requested increased coverage as of September, 1986. We need not consider whether Lumbermens is entitled to recover lost premiums since the issue was not raised below. However, we do note that the loss of additional premiums which is the direct result of an agent's negligence is recoverable from the agent. *Reserve Ins. Co.* v. *Netzer*, 621 F.2d 314, 317 (8th Cir. 1980) (agent's negligence causing loss of additional insurance premiums but not loss under policy). *Pennsylvania Millers Mut. Ins. Co.* v. *Walton*, 236 Ark. at 238 (insurer's only claim would be for difference in cost of policy actually issued and policy requested by insured).

Lumbermens had a duty to defend Adams, Lumbermens is not entitled to indemnification for legal expenses.[7]

*Judgment affirmed.*

---

[7]See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. at 762 (holding insurer liable for natural consequences of insurer's breach of duty to defend); *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154, 159 (1992) (construing policy to require insurer to defend insured even where insurer has tendered the policy limits); *Reserve Ins. Co.* v. *Netzer*, 621 F.2d 314, 316-317 (8th Cir. 1980) (denying insurer's request for reimbursement of legal costs and expenses).