Wexler, James H., J.
The plaintiff, Hingham Mutual Fire Insurance Company (“Hingham”) commenced this action to obtain a declaratory judgment stating that it had the legal right to rescind an insurance policy it had issued to David and Melanie Mercurio on the grounds that the Mercurios had made a material misrepresentation on their application. Hingham also presents an alternate theory that there was never a meeting of the minds over the terms of the insurance *87 policy and that the policy should therefore be reformed.
Based on all of the credible evidence and the reasonable inferences that the court may draw on that evidence, the court makes the following findings of fact and rulings of law.
David and Melanie Mercurio, a married couple, live in West Boyslton, Massachusetts and have two children: Talia (born on April 23, 1981) and Daniel (born on February 3, 1983). At all times pertinent to the present matter, Daniel lived at home with his parents.
Hingham is an insurance company with its principal place of business in Hingham, Massachusetts. Among the lines of insurance it writes are homeowner’s general liability policies and personal umbrella policies. Hingham has an Agency Agreement with West Boyslton Insurance Agency (“West Boylston”). West Boylston is also the Mercurios’ insurance agent.
Hingham insured the Mercurios under a homeowner’s policy and a one million dollar Personal Liability Umbrella policy (“the Policy"). As part of the periodic renewal process, on November 2, 2000, Hingham wrote to West Boylston, requesting that West Boyslton send them a completed umbrella questionnaire for the Mercurios so that Hingham could process a renewal for the Policy. In its application for the Policy, Hingham requested that the applicant list in the “Operator Information” section “all members of household and operators of vehicles/watercraft as required by company.” In response to Hingham’s request, West Boylston filled out a Personal Umbrella Application for and mailed it to David Mercurio (“David”) for review and signing.
When he received the application, David added Talia’s name in the “Operator Information” section. David did not add Daniel’s name in the “Operator Information” section of the application, although at the time Daniel was a member of the Mercurio household and did regularly operate a motor vehicle.[2] David signed the application on or around November 10, 2000 and returned it to West Boylston. West Boylston sent the application to Hingham, the Mercurios paid the premium, and Hingham renewed the Policy for the 2001 policy year. If David had included Daniel, an underaged driver, on the Policy, the premium would have been $25 or eighteen percent higher than what was charged.
On July 29, 2001, Daniel was driving a car owned by defendant Mary F. Gustafson when he was involved in a two-car accident (“the Accident”) in New Hampshire. Defendants Christopher Gustafson and Kelly Ambrose were passengers in the car with Daniel; they were both injured in the Accident. Lillian Prud’homme, the driver of the other car involved in the accident, was killed as a result of the Accident.
On October 17, 2001, Hingham was notified of the accident after the Prud’hommes’ attorney requested information relating to all policies insuring the Mercurio household. On November 15, 2001, Hingham notified the Mercurios that it was rescinding the Policy and refunding the $140 premium the Mercurios had paid for the 2001 policy year. The letter stated the following:
As you are aware, Hingham Mutual Fire Ins. Co. issued a personal umbrella liability policy to you, effective from January 9, 2001 until January 9, 2002. The policy lists David P. and Melanie Ann Mercurio as named insureds. On October 17,2001, we were notified of an automobile accident involving your son, Daniel Mercurio. The date of this accident was July 9, 2001.
On November 10, 2000, David Mercurio signed a “personal umbrella application” form that was forwarded to Hingham Mutual Fire. Ins. Co. by your insurance agency. Hingham Mutual Fire Ins. Co. relied on the contents of the application to issue your umbrella application policy. One of the questions on the personal umbrella application required you to list all members of your household and all operators of vehicles/watercraft. Daniel is not listed as a household member in response to that question.
Our investigation into this matter reveals that Daniel was, in fact, a member of your household on November 10, 2000, the date that the personal umbrella application was signed. Your failure to list Daniel as a household member is a material misrepresentation; Hingham Mutual Fire Ins. Co. would have charged a higher premium for your umbrella policy had we known that Daniel was a household member.
Hingham Mutual Fire Ins. Co. hereby rescinds your personal umbrella liability policy based on the material misrepresentation contained in the personal umbrella application that you signed. Enclosed is a check for $140.00, representing the total amount of the premium that you paid. The personal umbrella liability is now void, and will afford no coverage for any claims, including any claims arising out of your son’s automobile accident.
Nothing in this letter should be construed as an admission that the personal umbrella policy would have provided coverage for any particular claim, had no material misrepresentation been made. In the event of a judicial determination that the policy is not void, Hingham Mutual Fire Ins. Co. expressly reserves all rights and defenses available to it under the terms of the policy and under applicable law.
Hingham asserted that David’s failure to list Daniel as a household member was a material misrepresentation because Hingham would have charged a higher *88 premium had they known that Daniel was a household member.
In November 2001, Hingham commenced the present action for declaratory relief, seeking a declaration from the court that its rescission of the Policy was permitted by law and that the Policy therefore is void and affords no coverage for any liability claims, including those arising from the Accident.
Cambridge Mutual Fire Insurance Company (“Cambridge”) insured Lillian Prud’homme under an umbrella policy that also provided excess underinsurance coverage. After Hingham rescinded the Policy, the Prud’hommes were concerned that the available primary automobile insurance available would be insufficient to satisfy their claim for wrongful death and that Cambridge’s umbrella policy would be the next layer of available coverage. Cambridge (under the name “The Andover Companies”) was therefore allowed to intervene in the present case on the grounds that Hingham’s rescission of the Policy, which would have provided $1 million in liability coverage, is likely to adversely affect Cambridge’s obligations to the Prud’homme estate.
On October 9, 2002, the estate of Lillian Prud’homme and Roland Prud’homme filed a wrongful death suit against Daniel in New Hampshire state court. Daniel’s automobile insurers, Commerce Insurance Company and Hanover Insurance, provided him with a defense against the suit. In the fall of 2003, Commerce and Hanover agreed to pay Lillian Prud’homme’s estate $525,000, the full amount available under the policy limits of the automobile insurance policies, in settlement of all claims against Daniel. The Prud’homme estate then contended that the $525,000 available under the automobile policies was insufficient to fully compensate the estate for Lillian Prud’homme’s death and demanded that Cambridge pay additional sums under the underinsurance provisions of its umbrella policy and consent to the proposed settlement with Commerce and Hanover. In order to allow the wrongful death action to be fully settled without waiting for the resolution of the present case, Cambridge requested that Hingham agree that Cambridge could participate in the settlement of the wrongful death claim without waiving its claim that Hingham was not entitled to rescind the Policy or otherwise impairing Cambridge’s right to seek reimbursement from Hingham for any sums paid to the Prud’homme estate.
Cambridge and Hingham entered into an Intercompany Agreement under which they agreed as follows:
a. Any amount paid by Cambridge Mutual to settle the [Prud’hommes’] claims, or to satisfy an arbitration award, will be described in this Agreement as the “Settlement Amount.”
b. As long as the Settlement Amount is not more than $475,000.00, exclusive of any interest that might be awarded in an arbitration, then it will constitute the amount in controversy in the Declaratory Action, as defined more specifically in the following subparagraphs.
c. If Hingham Mutual prevails in the Declaratory Action, and the Court rules that the Hingham Mutual umbrella was validly rescinded or provides no coverage to Daniel Mercurio for the damages arising out of the Accident, then Hingham Mutual will have no liability to Cambridge Mutual for the Settlement Amount. The provisions of this subparagraph will apply whatever might be the legal basis for the Court’s judgment.
d. If Hingham Mutual does not prevail in the Declaratory Action, and the Court rules that the Hingham Mutual umbrella does provide coverage to Daniel Mercurio for the damages arising out of the Accident, then Hingham Mutual will be liable to Cambridge Mutual for the Settlement Amount, plus statutory interest from the time that the Settlement Amount was disbursed to the [Prud’hommes].
e. Hingham Mutual will not raise as a defense in the Declaratory Action any alleged lack of standing of Cambridge Mutual to seek indemnity from Hingham Mutual, and will not otherwise assert that any release of Daniel P. Mercurio and/or Hingham Mutual that may be given by the [Prud’hommes] precludes or limits Cambridge Mutual’s subrogation or indemnity rights against Hingham Mutual, and any such releases will not alter or affect Cambridge Mutual’s rights under this Inter-Company Agreement.
f. Hingham Mutual will have the right to appeal any adverse judgment in the Declaratory Action, and its liability to Cambridge Mutual under this agreement will not arise until all available appellate rights have been exhausted. Cambridge Mutual will also have the right to appeal any judgment in the declaratory action.
On November 25, 2003, after mediation, Cambridge agreed to pay the Prud’homme estate $315,000. Under the terms of the Intercompany Agreement, the amount in controversy in the present action is $315,000, plus interest.

RULINGS OF LAW

I. West Boylston Acted as an Agent for Both the Mercurios and for Hingham

An independent insurance agent, unlike a captive agent who is employed only by one insurer, acts as the agent for the company in some respects, and as the agent for the customer in some respects. The scope of the agent’s authority is a fact-specific inquiry in any given case, and the mere fact that an independent agent is a statutory licensed agent does not resolve the question. Savers Prop. & Cas. Ins. Co. v. Admiral Ins. Agency, Inc., 61 Mass.App.Ct. 158, 164 (2004) (deciding that G.L.c. 175, § 163 does not make an independent agent the insurer’s agent for all purposes).[3]
*89 “An independent insurance agency may be the agent of the insurer, even though the agent is licensed to sell insurance products for a variety of insurers, where the insurer has an agency appointment on file with the state Department of Insurance listing the agent as the insurer’s agent and the insurer has a written agency appointment agreement expressly authorizing the agent to transact business on behalf of the insurer as its agent.” L. Russ and T. Segalia, Couch on Insurance 3d, §45:5 (West Group 1997). An insurance agent who completes an application on behalf of an insured acts as the agent of the insurer. Couch on Insurance 3d, §51:1, at 51-4—51-4.
In the present case, West Boylston was acting as the agent of both Hingham and David Mercurio at different times during the transaction. In determining that Hingham offered an umbrella policy that best fit the Mercurios’ needs and advising David to take out an umbrella policy with Hingham, West Boylston was acting as his agent. At the same time, however, West Boylston was acting as Hingham’s agent when it sent out the renewal form to David and then relayed the completed renewal form to Hingham.

II. Hingham Did Not Have the Right to Rescind the Policy

Under Massachusetts law, an insurer may only rescind or cancel an insurance policy based on a misrepresentation as follows:
No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss.
G.L.c. 175, § 186. Any misrepresentation that results in the insurer charging a lower premium than it otherwise would have charged is “material” as a matter of law. Federal Deposit Ins. Corp. v. Underwriters of Lloyd’s of London, 3 F.Sup.2d 120, 140 (D.Mass. 1998); Barnstable County Ins. Co. v. Gale, 425 Mass. 126, 128 (1997); see also Hanover Ins. v. Leeds, 42 Mass.App.Ct. 54, 60 (1997). A material misrepresentation made in an application for an insurance policy will void that policy, such that the insurer has the right to rescind the policy. Barnstable County Ins., 425 Mass. at 128; Hanover Ins. Co. v. Leeds, 42 Mass.App.Ct. at 57.
However, when an insurance applicant “give[s] correct oral answers which are incorrectly recorded by an authorized agent . . . the insurer cannot rely on the falsify of such answers to avoid the policy.” John Hancock Mut. Life Ins. Co. v. Schwarzer, 354 Mass. 327, 329 (1968). “In general, the acts of an agent are imputed to an insurer, and where an agent by mistake, fraud, or negligence inserts erroneous or untrue an-
swers to questions contained in an application, the policy issued thereon is valid . . .” L. Russ and T. Segalia, Couch on Insurance 3d, §51:1, at 51-8 (West Group 1997). “Under the law of agency ... an insurance agent’s knowledge acquired while acting within the scope of the agent’s actual or apparent authority is imputed to the insurer even though such knowledge is not actually communicated to the insurer.” Southeastern Ins. Agency, Inc. v. Lumbermen’s Mut. Ins. Co., 38 Mass.App.Ct. 642, 645 (1995), reversed on other grounds, 423 Mass. 1008.
If the applicant has justifiably relied in good faith on the agent in filling out the application, it would be unjust to permit the insurer, a loss having occurred, to repudiate the contract on the ground of its own agent’s unskillfulness, mistake, carelessness, or fraud. Id. at §51:5. See also New England Acceptance Corp. v. Am. Mfrs. Mut. Ins. Co., 4 Mass.App.Ct. 172, 177-78 (1976). Furthermore, “[i]t would be unfair to permit the insurance company to avoid a contract of insurance because of the failure of the insurer’s own agents to correctly record or communicate information which was provided to them by the insured. The agent’s negligence is imputable to the insurer.” Dunigan v. Boston Mut. Life Ins. Co., 2000 Mass.App.Div. 1, *3-*4 (Mass.Mun.Ct. 2000).
In the present case, Hingham contends that David Mercurio made a material misrepresentation by omitting his son Daniel in the “Operator Information” section of his renewal application for the Policy. Hingham contends that omitting Daniel from the Policy application is material because the omission resulted in Hingham charging David $25 less than it otherwise would have charged had Daniel been included on the application. See Barnstable County, 425 Mass. at 128 (determining misrepresentation is material when the insurer charged a premium $30 less than it otherwise would have charged).
West Boylston knew in November of 2000 that Daniel was a member of the Mercurio household, and that he had a driver’s license. Because West Boylston was acting as Hingham’s agent in regards to assisting David in filling out the renewal form, West Boylston’s knowledge about Daniel is imputed as a matter of law to Hingham, even if that knowledge was not actually communicated to Hingham. Southeastern Ins. Agency, Inc., 38 Mass.App.Ct. at 645. Because Hingham had constructive knowledge about Daniel, there was no misrepresentation, and Hingham therefore does not have grounds to rescind the Policy pursuant to G.L.c. 175, § 186.

III. Reformation of the Policy Is Not Appropriate

The Mercurios apparently did not expect the Policy to cover Daniel. The agent at West Boylston did not tell them that it would only cost an additional $25 for the Policy to cover Daniel. The agent at West Boylston knew Daniel’s age and that he was living in the *90 Mercurio household at the time David submitted the renewal application.
Hingham argues that the Policy should be reformed on the grounds of mutual mistake because neither party intended the Policy to cover Daniel. Where contracting parties have “an identical intention as to the terms to be embodied” in the contract and the contract fails to reflect that intention, this is mutual mistake, and the contract is subject to reformation. Franz v. Franz, 308 Mass. 262, 266 (1941); see also Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 756 (1993) (noting where neither insured nor insurer expected that policy would cover pollution claims, policy would be reformed to exclude pollution claims). However, “[w]here both parties to a contract are mistaken but as to different matters, reformation is inappropriate as there is no mutual agreement to enforce.” Southeastern Ins. Agency, Inc., 38 Mass.App.Ct. at 646 n.3.
This court has already decided that the Policy application is unambiguous. The renewal application does not allow coverage for selective members of a household. The “Operator Information” question asks the applicant to list all household members, not household members for whom the applicant wants insurance coverage. The Policy is therefore an all-or-nothing deal — either the whole household is covered or no one is covered. The Mercurios may not have intended to cover Daniel, but the insurance agent failed to explain that they had to buy coverage for Daniel or else their application could be rescinded. It would be inequitable to burden the Mercurios with the mistakes and poor training of Hingham’s agent at West Boylston.
The Policy cannot be reformed to reflect that the Mercurios did not intend to cover Daniel because there was no mutual mistake which would justify reformation. Although Hingham and the Mercurios both made mistakes, the mistakes were different from each other. Hingham’s mistake was charging the wrong premium, because it had constructive knowledge that Daniel was a member of the household. The Mercurios’ mistake was misunderstanding the unambiguous language of the “Operator Information” section. Reformation of the Policy is therefore inappropriate.

ORDER

For the foregoing reasons, it is hereby ORDERED that declaratory judgment enter, stating that Hingham did not have the right to rescind the Policy. In addition, the court rejects Hingham’s alternate theory that the Policy should be reformed. It is therefore ORDERED that judgment enter for the defendants.

 A different insurance company provided automobile insurance to David and Melanie Mercurio; Talia was listed as a driver on David and Melanie’s automobile insurance. In contrast, Daniel was responsible for obtaining his own automobile insurance, so he was not listed on David and Melanie’s automobile insurance policy.

 Section 163 of G.L.c. 175 sets out the licensing requirements between insurance companies and insurance agents. The statute states in pertinent part: “Every company shall be bound by the acts of the person named in the license within the scope of his apparent authority as its acknowledged agent while such license remains in force.”