Curran, Dennis J., J.
In 2003, National Fire and Marine Insurance Company (“National") provided an insurance policy for AT Equipment, Inc. (“AT”). Insurance Professionals of New England, Inc. (“IPNE”) had arranged for The Quaker Insurance Agency of Massachusetts, Inc. (“Quaker”) to obtain a quote from National for AT. AT is a Massachusetts company that rents and sells hydraulic hammers attached to heavy construction equipment. National is a non-admitted insurance company located in Nebraska. IPNE has been AT’s insurance broker since 1998, and Quaker is an insurance broker for non-admitted insurance carriers in Massachusetts. AT and National were bound under the original policy for 2003-2004.
To renew AT’s policy with National for 2004-2005, IPNE filled out and delivered to AT an ACORD insurance application and a handwritten Commercial General Liability insurance application. The application used gross sales figures that approximated AT’s sales in its first years of business despite the company’s recent substantial increase in annual gross sales. ATs managers did not read the entire application, but filled in a few sections and signed on behalf of AT.
National issued Commercial General Liability insurance policy #72LPE 693287 to AT, effective August 19, 2004. The policy gave National the right to audit ATs records and charge additional premiums if the audit determined that these payments were appropriate. In June of 2006, National audited AT. It revealed that an additional $102,405 was due. With taxes, the total balance due from AT was $104,592.80. AT does not contest the accuracy of National’s computations.
On May 17, 2007, National sued AT on theories of breach of contract and unjust enrichment to collect an additional $102,405 premium. AT’s answer asserted the defenses of mutual mistake of fact, unilateral mistake of fact, estoppel, breach of contract, and sufficiency of legal remedies. AT also counterclaimed for declaratory judgment, promissory estoppel, breach of contract, mistake of fact, misrepresentation, and unfair or deceptive practices under G.L.c. 93A. This court later dismissed ATs counterclaim.
National now moves, under Mass.R.Civ.P. 56, for summary judgment, arguing that there is a valid insurance contract and AT has offered no legally sufficient defense to the action. AT opposes this motion, contending that an issue of fact exists regarding whether the insurance policy at issue should be reformed on the basis of fraud or mistake. This court addresses the two proposed grounds for reformation, as follows.
DISCUSSION
Fraud
A defendant must raise all affirmative defenses in answering the complaint. Mass.R.Civ.P. 8(c). AT failed to assert fraud as an affirmative defense in its answer to the complaint, so it cannot now request reformation on that ground. Dipietro v. Sipex Corp., 69 Mass.App.Ct. 29, 39 (2007) (finding the defense of fraud unavailable to a defendant who failed to raise it *125 as an affirmative defense until his response to a summary judgment motion).
Even if AT had claimed the affirmative defenses of fraud or misrepresentation in its answer to National’s complaint, this court cannot reform the contract. To void a contract on the basis of fraud, a “defendant must prove that the plaintiff (1) made a false misrepresentation, of (2) a material fact (3) with knowledge of its falsity, and that (4) the defendant relied upon it.” R.W. Bishop, Prima Facie Case Proof and Defense, 2.52, at 106 (5th ed. 2005); see also, e.g., Cummings Property Management, Inc. v. W.R. Grace & Co., 1 Mass. L. Rptr. 429 (Mass.Super. 1994). Here, Quaker had no reason to question the sales information before AT and National entered into the insurance contract because the contract itself gave National the right to audit. This court, therefore, cannot impute knowledge of falsity to National from the mere fact that Quaker failed to scrutinize the information in the application. As no facts indicate actual or constructive knowledge of falsity on the part of National, fraud would be an inappropriate basis to reform the contract.
Mistake
In general, “(r)eformation is an appropriate remedy for an agreement containing a mistake if the mistake is mutual or was made by one party (unilateral) such that the other party knew or had reason to know of it.” Nissan Automobiles of Marlborough, Inc. v. Glick, 62 Mass.App.Ct. 302, 306 (2004), citing Polaroid Corp. v. Travelers Indemnity Co., 414 Mass. 747, 756 (1993).
A mutual mistake exists when all parties to an agreement share the identical understanding of the terms to which they agreed, but the written contract fails to reflect that intent. Southeastern Ins. Agency, Inc. v. Lumbermens Mutual Insurance Company, 38 Mass.App.Ct. 642, 646 (1995) (vacated on separate grounds). However, if “both parties to a contract are mistaken but as to different matters, reformation is inappropriate as there is no mutual agreement to enforce.” Hingham Mutual Fire Insurance Company v. Mercurio, 21 Mass. L. Rptr. 86 (Mass.Super. 2006) (finding a lack of mutual mistake where insurer was mistaken as to the appropriate premium and insured was mistaken as to the importance of language in the application), affd, 71 Mass.App.Ct. 21, 26-27 (2008); see also Southeastern Ins. Agency, Inc., 38 Mass.App.Ct. at 646 n.3. AT and National were both mistaken, but as to different matters: AT was mistaken about the validity of its application’s contents, and National was mistaken regarding the appropriate premium. Therefore, this court cannot reform the contract for mutual mistake.
To void a contract on the basis of a unilateral mistake, a party must be able to show that “he does not bear the risk of the mistake . . . and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake.” Nissan, 62 Mass.App.Ct. at 306, quoting Restatement (Second) of Contracts, 153; Zysk v. Baker, 21 Mass. L. Rptr. 675 (Mass.Super.Ct. 2006) (finding a unilateral mistake where buyer knew or had reason to know of trustee’s mistake regarding the nature of the property). A party bears the risk of a mistake when the parties’ agreement allocates it to him, when he treats his limited knowledge of the facts as sufficient, or when it is otherwise reasonable for a court to so determine. Restatement (Second) of Contracts, 154. The contract gives National the right to audit ATs records; it not only indicates that National did not treat its limited knowledge of the facts as sufficient, but expressly provides that AT bore the risk of mistake. Thus, this court cannot reform the insurance policy for unilateral mistake.
RULING
For the foregoing reasons, National’s motion for summary judgment is ALLOWED.