Cornetta, Roberta., J.
INTRODUCTION
This action involves a dispute regarding insurance coverage in connection with personal injuries sustained by the plaintiff, Scott Caron, when an American Bull Dog, owned by Alan and Katherine Fowler bit him in the face. The Fowlers, who had insurance coverage pursuant to a homeowner’s policy issued by the defendant, Horace Mann Insurance Company (“Horace Mann”), were unaware, until after the dog bite incident, that the policy issued by Horace Mann (the “Policy”) contained an amendatory endorsement, which reduced their personal liability coverage for claims arising from dog bites to $25,000 per claim.
In February 2009, after a jury trial, Mr. Caron and his wife, Caiyn Caron, obtained a judgment against the Fowlers in the amount of $250,559.96 for personal injuries suffered by Mr. Caron and loss of consortium suffered by Mrs. Caron in connection with the dog bite incident. Pursuant to the Policy Horace Mann issued to the Fowlers, it paid the Carons $25,000 toward the judgment on behalf of the Fowlers. Thereafter, the Fowlers assigned their claims against Horace Mann to the Carons and the Carons, in turn, brought the current action.
In March 2011, the Carons, as assignees, asserted claims against Horace Mann for errors and omissions (Count I), negligent misrepresentation (Count II), and mutual mistake (Count III). Subsequently, on July 29, 2011, the Carons filed a Motion for Partial Summary Judgment as to Count III, arguing that, at the time Mrs. Fowler purchased the Policy from Horace Mann, both she and Horace Mann’s agent, Barbara Bode, were mutually mistaken about the amount of personal liability coverage the Policy provided for dog bite claims. More specifically, according to the Carons, both Ms. Bode and Mrs. Fowler each believed that the Policy would provide up to $500,000 of coverage for personal liability claims, including for claims arising from dog bites. Because both Ms. Bode and Mrs. Fowler were mistaken as to the terms of the Policy as it related to coverage for dog bites, the Carons argued that the court should reform the Policy to omit the limitation so as to allow the Policy to reflect the true intent of the parties. On September 14, 2011, the court (Cornetta, J.) agreed, allowing the Carons’ Motion for Partial Summary Judgment. The matter is now before the court on the Carons’ Motion to Enter Separate and Final Judgment. For the reasons explained below, the *169 Motion to Enter Separate and Final Judgment will be ALLOWED.
BACKGROUND
In 2006, the Fowlers were purchasing their homeowner’s insurance through the Massachusetts Property Insurance Underwriting Association, also known as the Massachusetts Fair Access to Insurance Requirements Plan (the “FAIR Plan”). The FAIR Plan afforded the Fowlers $500,000 in personal liability coverage. Although they did not wish to change their coverage limits, the Fowlers were interested in finding a plan with lower rates. Thus, in March 2006, Mrs. Fowler contacted Ms. Bode, whom she had met at the Amesbury Middle School, while Ms. Bode was distributing fliers advertising insurance through Horace Mann.
On March 10, 2006, Mrs. Fowler and Ms. Bode met to prepare an application for homeowner’s insurance through Horace Mann. At this meeting, Ms. Bode reviewed the FAIR Plan declaration page with Mrs. Fowler to ensure that the coverage provided under the Policy issued by Horace Mann would be “of like kind and extent” as that provided by the FAIR Plan. Also during this meeting, Ms. Bode asked Mrs. Fowler a series of questions related to dog ownership. Mrs. Fowler informed Ms. Bode that the Fowlers owned an American Bull Dog. After reviewing the Policy, Ms. Bode explained to Mrs. Fowler that only the listed breeds were excluded from coverage and that the American Bull Dog was not one of the listed breeds.
Before the end of their meeting, Ms. Bode printed Mrs. Fowler’s application, which she and Mrs. Fowler signed. The application showed personal liability coverage limits of $500,000. In addition, at the conclusion of their meeting, Ms. Bode generated a document entitled “Verification of Coverage,” which showed that the Fowlers had personal liability coverage under the Policy for up to $500,000. Nothing in the documents signed by or provided to Mrs. Fowler on March 10, 2006, indicated that the Fowlers’ personal liability coverage under the Policy would be anything less than $500,000 per claim.
The Policy issued by Horace Mann was, however, subject to certain limiting endorsements. Endorsement number CC-P06013, entitled “Animal Liability Amendatory Endorsement” (the “Animal Liability Endorsement”), provided, in pertinent part, that
[t]he limit shown on the declarations for Coverage L is the most we will pay for loss for each occurrence, other than loss or claim resulting from an animal bite. For loss or claim arising from an animal bite by any animal not listed under exclusion 14 above, or described in exclusion 15 above, the most we will pay is $25,000 per occurrence.
An American Bull Dog was not one of the animals listed in exclusion 14 or described in exclusion 15 of the Animal Liability Endorsement. Pursuant to this provision, the limit of $25,000 for personal liability coverage for claims arising out of animal bites applied to the Fowlers’ dog. Thus, the Policy did not provide the Fowlers with personal liability coverage for up to $500,000 for the claims brought by the Carons in connection with the injuries Mr. Caron sustained when the Fowlers’ dog bit him.
DISCUSSION
A mutual mistake exists when all parties to an agreement share the identical understanding of the terms to which they agreed, but the written contract fails to reflect that intent. Southeastern Ins. Agency, Inc. v. Lumbermens Mut. Ins. Co., 38 Mass.App.Ct. 642, 646 (1995) (vacated on separate grounds). More specifically, “[t]he phrase ‘a mutual mistake’ as used in equity, means a mistake common to all the parties to a written contract or instrument, and it usually relates to a mistake concerning the contents or the legal effect of the contract or instrument.” Page v. Higgins, 150 Mass. 27, 30-31 (1989); see also O’Reilly’s Case, 258 Mass. 205, 208 (1927). “The mistake must be by both [parties] and in reference to the same matter.” Barrell v. Britton, 252 Mass. 504, 508 (1925).
“The usual remedy, when, by accident or mutual mistake, a written contract does not express the actual contract of the parties, is by a reformation or rectification of the writing, and this is a remedy for any party to the written contract, unless the statute of frauds prevents.” Page, 150 Mass, at 30. Insurance policies are subject to reformation under the same principles applicable to other contracts. See Polaroid Corp. v. Travelers Indenm. Co., 414 Mass. 747, 756 (1993). Where a written insurance policy does not reflect terms consistent with the mutual intent of the parties thereto, the inconsistent terms should be reformed so as to omit the offending provision so that the policy reflects the expectations of the parties. See Franz v. Franz, 308 Mass. 262, 266 (1941).
In this case, Mrs. Fowler .intended to purchase a policy from Horace Mann that provided the same coverage that had been available to the Fowlers under the FAIR Plan. Likewise, Ms. Bode intended to sell a Horace Mann policy to Mrs. Fowler that provided coverage “of like kind and extent” to that which the Fowlers received under the FAIR Plan. Additionally, at all relevant times, Mrs. Fowler believed that she had purchased a policy that provided personal liability coverage up to $500,000, similar to the personal liability coverage she had received under the FAIR Plan. Ms. Bode also believed she had sold a policy that provided up to $500,000 in personal liability coverage. Clearly, the parties were mutually mistaken as to the contents and legal effect of the language contained in the Policy’s Animal Liability Endorsement.[2] See Page, 150 Mass, at 30. Further, the proper remedy for correcting this mutual mistake is to reform the Policy to remove the language from the Animal Liability *170 Endorsement, which limits the Fowler’s personal liability coverage for dog bites to $25,000. For these reasons, the Carons are entitled to separate and final judgment against Horace Mann.[3]
ORDER
Pursuant to Mass.R.Civ.P. 54(b), “there [being] . . . no just reason for delay,” for the reasons explained above, it is hereby ORDERED that the Carons’ Motion to Enter Separate and Final Judgment As to Count III is ALLOWED. Judgment is ORDERED entered accordingly upon the docket by the clerk magistrate and notice shall be provided to the parties.

Notably under Massachusetts law, an insurance company is bound by its agent’s knowledge of the terms and conditions of a policy the agent negotiated on its behalf. See Simon v. National Union Fire Ins. Co. of Pittsburgh, PA, 57 MassApp.Ct. 350, 354 (2003) (internal citations omitted). For this reason, Horace Mann is bound by Ms. Bode’s knowledge and intent at the time she negotiated the purchase of the Policy with Mrs. Fowler.

As indicated above, in addition to their claim for reformation predicated on mutual mistake, the Carons also asserted claims against Horace Mann for errors and omissions and negligent misrepresentation. Because the Carons have prevailed on their claim premised on mutual mistake and their other claims provide no additional relief, these other claims for errors and omissions and negligent misrepresentation are moot.